UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:    **09-23249**

CIV-GOLD

/ McALILEY

INDIAN HARBOR INSURANCE
COMPANY, a foreign corporation
Licensed to do business in the State
of Florida,

     Plaintiff,

vs.

BEVERLY HILLS APARTMENTS,
INC., a Florida Corporation,

     Defendant.

_____/

FILED by ___ D.C.
INTAKE

OCT 2 6 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

## PLAINTIFF INDIAN HARBOR INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, INDIAN HARBOR INSURANCE COMPANY, a foreign corporation authorized to do business in the State of Florida, by and through its undersigned attorneys and files this Complaint for Declaratory Relief, stating as follows:

1.    This is an action filed pursuant to 28 U.S.C. Section 2201, known as the Declaratory Judgment Act.

2.    Plaintiff, INDIAN HARBOR INSURANCE COMPANY (hereinafter "INDIAN HARBOR"), is a foreign corporation incorporated under the laws of the State of North Dakota and authorized pursuant to Florida Statute to do business in the State of Florida.

3.    Defendant, BEVERLY HILLS APARTMENTS, INC., (hereinafter "BEVERLY HILLS APARTMENTS"), was and is located in Miami, Dade County, Florida.

4.    To the knowledge and belief of Plaintiff, the Defendant at all times material hereto, was and is a corporation incorporated in the State of Florida and is a citizen of the State of Florida.

5.    The amount in controversy exceeds the sum of $75,000.00, exclusive of interest, attorney's fees and costs.

6.    This court has diversity of jurisdiction pursuant to 28 U.S.C. Section 1332.

7.    An actual controversy of a judicial nature exists between Plaintiff and Defendant who are citizens of different states, involving rights and liabilities under a contract of insurance, and dependent upon the terms, conditions and exclusions of said contract of insurance, said controversy can be determined by a judgment in this action, without the necessity of additional lawsuits.

## COMMON ALLEGATIONS

8.    INDIAN HARBOR issued a Named Peril Commercial Property Policy bearing policy number ICI0976100121401 to BEVERLY HILLS APARTMENTS for property located at five locations in Miami – the Beverly Hills Apartments, location 1 (201-211 NW 72nd Ave.); the Loch Lomond, location 2 (355 NW 72nd Ave.); The Clearing, location 3 (8707-8711 SW 97th Ave.); the Gables by the Sea, location 4 (611-615 Forrest Dr.);  and the Monte Carlo, location 5 (305-307 N.W. 72nd Ave.).  All of these locations were in Miami, Dade County, Florida.  The policy had effective dates of February 1, 2005 – February 1, 2006. ***See Exhibit A, a Certified Copy of the policy and its endorsements.***

9.      On or about October 24, 2005, Hurricane Wilma made landfall in Florida.

10.     On October 27, 2005, BEVERLY HILLS APARTMENTS presented a Property Loss

        Notice for damages caused by Hurricane Wilma to 611-615 Forest Dr., Miami, Florida.

11.     BEVERLY HILLS APARTMENTS retained the services of Allied Public Adjusters, a

        public adjuster, on October 28, 2005, to prepare and present its claim to INDIAN

        HARBOR.

12.     INDIAN HARBOR  investigated the reported losses, and issued the following payments:

| Policy location/building | Location/Address (Miami) | Amount Paid | Deductible |
|---|---|---|---|
| 1/1 | **Beverly Hills Apartments** 201-211 NW 72nd Ave (Bldg 1) | $51,474.17 | $59,160 |
| 3/1 | **Gables by the Sea** 8707-8711 SW 97th Ave | $124,559.01 | $55,244 |
| 4/1 | **The Clearing** 611-615 Forrest Dr. | $295,979.95 | $48,833 |
| Net Total | | $472,013.13 | |
| Gross Total | | $635,250.13 (with $163,237 deductible included) | |

13.     Thus, INDIAN HARBOR estimated the total covered loss to locations 1, 3, and 4

        (building 1 at each location) to be $635,250.13, and after application of the $163,237.00

        deductible, issued total payments in the amount of $472,013.13 to BEVERLY HILLS

        APARTMENTS for all undisputed damages as to building damages to locations 1, 3, and

        4.

14.     These payments were negotiated with the insured's first public adjuster, Jose Placeres of

        Allied Public Adjusters.

15.   Since that time, the insured has sold location number 4, The Clearing, at 611-615 Forrest Dr., Miami, Florida.

16.   During the initial adjustment of the Hurricane Wilma claim, BEVERLY HILLS APARTMENTS made no claim for damages to location 1, building 2 (Building 2 of the Beverly Hills Apartments, 211 NW 72nd Ave.), location 2 (the Loch Lomond, 355 NW 72nd Ave.), or location 5 (the Monte Carlo, 305-307 N.W. 72nd Ave.).

17.   Damages to location 1, building 2 (Building 2 of the Beverly Hills Apartments, 211 NW 72nd Ave.), location 2 (the Loch Lomond, 355 NW 72nd Ave.), or location 5 (the Monte Carlo, 305-307 N.W. 72nd Ave.), were not reported until July 19, 2008. (The "new claim"). At that time, the alleged damages were reported by the insured's new Public Adjuster, Mr. Garcia of Teamwork Adjusters. Additionally, a Property Loss Notice was submitted on July 22, 2008, for damages to the Loch Lomond Apartments at 355 NW 72nd Ave., Miami, Florida (location 2).

18.   Thereafter, Mr. Garcia also presented a supplemental claim for additional damages to Building 1 of the Beverly Hills Apartments (201 NW 72nd Ave.).

19.   No additional claims have been made for locations 3 (Gables by the Sea) or 4 (The Clearing).

20.   During the investigation of the new claim under a reservation of rights, the insured submitted proofs of loss on April 29, 2009, in the following amounts (after the deductibles have been subtracted):

(a) Beverly Hills Apts, 201 NW 72nd Ave.: $217,589.99 (location 1, building 1)

(b) Beverly Hills Apts, 211 NW 72nd Ave.: $209,202.89 (location 1, building 2)

(c) Loch Lomand, 355 NW 72nd Ave.: $253,703.20 (location 2)

(d) Monte Carlo, 305 NW 72nd Ave.: $517,649.70 (location 5)

*See Exhibit B.*

21.    However, those proofs of loss were unsupported by sufficient documentation to prove that the insured premises were damaged by Hurricane Wilma in the amounts stated.

22.    Indian Harbor also requested documentation in support of the proof of loss, and asked that the insured submit to an Examination under Oath.

23.    BEVERLY HILLS APARTMENTS has submitted to the Examination under Oath by producing Jose Ponce, BEVERLY HILLS APARTMENTS' property manager (who was presented as the corporate representative with the most knowledge concerning the insurance and claims presented to INDIAN HARBOR); Mr. Garcia, BEVERLY HILLS APARTMENTS' public adjuster; Enrique Miranda, an estimator with BEVERLY HILLS APARTMENTS' public adjuster; and also by Mr. Rivero, the owner of BEVERLY HILLS APARTMENTS, answering written questions under oath.

24.    INDIAN HARBOR, through counsel, requested numerous documents in connection with the Examination Under Oath, in a letter to the insured's counsel dated January 26, 2009. *See Exhibit C.*

25.    However, the insured has not presented documents responsive to many of the requests.

26.    Indian Harbor retained EFI Global, whose engineer Richard Harb conducted an origin and cause damage investigation of the locations on May 21, 2009.

27.    Engineer Harb reported that the roof on Building 1, of the Beverly Hills Apartments, at 201 NW 72nd Ave., had been replaced, and there was no evidence remaining to indicate

whether that roof suffered wind damages from Hurricane Wilma.

28.     Likewise, Engineer Harb was unable to determine the cause of reported water infiltration inside the residences of Building 1 of the Beverly Hills Apartments (201 NW 72nd Ave.) due to the absence of evidence resulting from the replacement of the roof.

29.     Moreover, in the initial adjustment of the claim in 2005-2006, Indian Harbor made payment on the Building 1 of the Beverly Hills Apartments, which included the roof replacement cost and the cost to repair damages to six units on the fourth floor, and which was paid without withholding of any depreciation.

30.     No documentation has been presented to show that the insured has incurred damages in excess of those already paid by Indian Harbor for Hurricane Wilma damages to this building ($51,474.17), plus the applicable $59,160 deductible.

31.     Regarding building 2 of the Beverly Hill Apartments, at 211 NW 72nd Ave, Engineer Harb concluded there was no wind damage to the roof, and there were no interior damages reported.  Further, the engineer concluded that deterioration to the roof of that building that was caused by normal long-term wear and tear.

32.     However, Engineer Harb concluded that there was some wind damage to the Loch Lomond Apartments and the Monte Carlo Apartments.

33.     At the Loch Lomond, Engineer Harb found that the damage to the replaced tiles at the south edge of the roof, and the interior damage to unit 405 were consistent with damage from hurricane winds.

34.     At the Monte Carlo Apartments, Engineer Harb found that the damage to the top of the parapet wall on the southeast of building 307, the damage to the wood siding above the

6

staircases, and the wind uplift at the edges of the building, and the soffit damage, were consistent with damage from hurricane winds. However, he noted that there was no evidence of wind damage to the field of the roof and the water infiltration inside the units was consistent with the deterioration of the roof caused by normal long-term wear and tear.

35. Indian Harbor's general adjuster, Robert Luongo of T.M. Mayfield, was present at the Engineer Harb's inspection (as was the insured's public adjuster Mr. Garcia, and property manager, Mr. Ponce), and prepared an estimate of damages for the observed wind damages to both buildings of the Monte Carlo, and to the Loch Lomond. *See Exhibits D and E, estimates for the Monte Carlo and Loch Lomond, respectively.*

36. With regard to the Monte Carlo, which is location number 5 on the policy, Building Number 1 (305 NW 72nd Ave., Miami) has a deductible of $61,200.00, and the estimate of covered damages was only $16,721.31. Building Number 2 (307 NW 72nd Ave., Miami) also has a deductible of $61,200.00, but the estimate of damages was only $34,645.22. *See Exhibit A, policy, and Exhibit D, estimate of damages.*

37. With regard to Loch Lomond Apartments, at 355 NW 72nd Ave., Miami, the deductible was $91,800.00, but the estimate of covered damages was only $13,588.97. *See Exhibit A, policy, and Exhibit E, estimate of damages.*

38. Thus, for the buildings in which Engineer Harb did find wind damage, the estimates for those damages prepared by Robert Luongo of T.M. Mayfield were all for less than the corresponding deductibles. As such, no payments are due for these damages.

7

39.    Based on the reports of Engineer Harb and the estimates of Robert Luongo of T.M. Mayfield, as well as numerous coverage reasons including late notice and failure to produce requested documentation in support of the new claim, INDIAN HARBOR sent correspondence to BEVERLY HILLS APARTMENTS on October 21, 2009 informing it that no additional money is due to it for Hurricane Wilma damages. ***See attached Exhibit F.***

**COUNT I**

**FAILURE TO GIVE TIMELY NOTICE AND FULLY COMPLY WITH CONDITIONS AND OBLIGATIONS UNDER THE POLICY**

Plaintiff realleges and reincorporates Paragraphs 1 through 39 and further states:

40.    That the subject policy provides in pertinent parts as follows:

**NAMED PERIL COMMERCIAL PROPERTY COVERAGE FORM**

...

**Part II-        Loss Provisions**

**Article XV      Notice of Loss**

> You shall, as soon as practicable, report in writing to Us or Our representative every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with Us or Our representative a signed, detailed and sworn proof of loss within 60 days after Our request for such sworn proof of loss. We will provide You with the necessary forms.

. . .

**Article XVI   Responsibility of Named Insured; Protection of Property**

> A.    You shall take all reasonable steps to protect Covered Property from further damage following loss or damage to Covered Property. Notwithstanding the foregoing, We will not pay for any subsequent loss, damage or expense to such Covered Property the result of a Cause of Loss not covered under this Policy.

8

B.     You shall keep a record of expenses incurred to protect the Covered Property following loss for consideration in the settlement of the claim.

. . .

**Article XXII Examination Under Oath**

A.     … Furthermore, as often as may be reasonably required, You shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by Us or Our representative, and shall permit extracts and copies thereof to be made.

B.     No such examinations under oath or examination of books or documents, nor any other act by Us or any of Our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which We might otherwise have with respect to any loss or claim; all such examinations and acts shall be deemed to have been made or done without prejudice to Our liability.

41.     INDIAN HARBOR asserts that BEVERLY HILLS APARTMENTS' 2 year, 9 month delay in reporting its alleged Hurricane Wilma damages violated the Article XV of the subject policy and prejudiced INDIAN HARBOR's investigation and adjustment of the claim with respect to location 1, buildings 1 and 2 (the Beverly Hills Apartments, 201-211 NW 72nd Ave.), location 2 (the Loch Lomond, 355 NW 72nd Ave.), and location 5 (the Monte Carlo, 305-307 N.W. 72nd Ave.).

42.     INDIAN HARBOR requested documentation from BEVERLY HILLS APARTMENTS to support its Sworn Statement in Proof of Loss.

43.     BEVERLY HILLS APARTMENTS failed to provide all of the documentation requested by INDIAN HARBOR to support its Sworn Statement in Proof of Loss, violating both

9

Article XV and Article XVI.

44.     BEVERLY HILLS APARTMENTS should be barred from receiving any monies from

INDIAN HARBOR due to its violation of the above-referenced policy provisions.

## COUNT II

### ASSISTANCE AND COOPERATION OF INSURED
### AND DUTY TO KEEP A RECORD OF EXPENSES INCURRED

Plaintiff realleges and reincorporates Paragraphs 1 through 39 and further states:

45.     The policy contains the following language:

**Part II – Loss Provisions**

**Article XVI    Responsibility of Named Insured; Protection of Property**
                ...
                B. You shall keep a record of expenses incurred to protect
                the Covered Property following loss for consideration in the
                settlement of the claim.

**Article XVII   Assistance and Cooperation of the Named Insured**

                You shall cooperate with Us in the investigation or settlement
                of any claim. ...

46.     INDIAN HARBOR requested documentation supporting alleged additional damages in

connection with the Examination Under Oath. The documents requested were detailed in

letters from Boehm Brown to counsel for BEVERLY HILLS APARTMENTS dated

January 26, 2009. *See Exhibit C.*

47.     BEVERLY HILLS APARTMENTS' failure to provide requested documentation is in

violation of the terms and conditions of the policy and the insured has failed to

substantiate damages claimed and INDIAN HARBOR is not responsible for further

payment.

## COUNT III

### BEVERLY HILLS APARTMENTS FAILED TO ESTABLISH THAT IT EXPERIENCED A COVERED LOSS BY A NAMED PERIL WHICH EXCEEDED THE NAMED HURRICANE DEDUCTIBLE

Plaintiff realleges and reincorporates Paragraphs 1 through 39 and further states:

48.    That INDIAN HARBOR issued a Named Peril Commercial Property Policy to BEVERLY HILLS APARTMENTS which provides coverage for damages caused by wind and hail.  Specifically, the subject policy provides in pertinent part:

#### NAMED PERIL COMMERCIAL PROPERTY COVERAGE FORM

#### Part I - General Provisions

**Article I**       **Insuring Agreement.**

This Policy insures against direct physical loss or damage to Covered Property the direct result of a Cause of Loss covered hereunder, as provided and defined by the attachment of one or multiple Cause of Loss Coverage Endorsement Forms, while the property is located at a Covered Location.

. . .

#### WIND AND HAIL CAUSE OF LOSS COVERAGE ENDORSEMENT FORM 204

#### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

I.    This Policy provides coverage for loss or damage directly caused by wind and hail.

II.   Notwithstanding the foregoing, coverage provided by this Endorsement does not include loss, damage or expense to the interior or exterior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand, or dust, whether driven by wind or otherwise, unless the building or structure first sustains wind or hail damage to its roof, walls, doors or windows, through which the rain, snow, sand or dust enters.

All other terms and conditions of this Policy remain.

11

## Part I – General Provisions

**Article XI     Excluded Causes of Loss**

This Policy provides coverage for direct physical loss or damage to Covered Property caused by only the (those) Covered Cause(s) of Loss defined in the Cause of Loss Coverage Endorsement Form(s) attached to this Policy.  Loss or damage from all other Causes of Loss, whether caused directly or indirectly, are excluded from coverage under this Policy.  The exclusions listed in this Article XI are added to this Policy for clarity; the inclusion of such exclusions shall in no way limit the excluded Causes of Loss applicable to this Policy nor in any way expand the Causes of Loss covered by this Policy.  Furthermore loss, expense, and damage the result of a Cause of Loss included in this list of exclusions are excluded from coverage hereunder, whether a covered Cause of Loss that is covered by this Policy contributes concurrently or in any sequence to any loss, expense, or damage.

…

9.      Dampness of atmosphere, dryness of atmosphere, changes in or extremes in temperature, shrinkage, evaporation, loss of weight, rust or corrosion, exposure to light, contamination, fungus, mold, mildew, wet rot, dry rot, deterioration, decay, hidden or latent defect, change in flavor or color or texture of finish, whether loss or damage from such excluded Causes of Loss is direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by a Cause of Loss covered under this Policy

## DEDUCTIBLE ENDORSEMENT FORM 409:
## NAMED HURRICANE AGGREGATE DEDUCTIBLE BY LINE OF COVERAGE

**THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY**

Article IX – Deductible

I.      Your deductible under the Policy is as follows:

A.      Named Hurricane. If loss or damage to Covered Property is caused by a Hurricane (as defined herein) Your deductible will be the amount shown in the Declarations Page Schedule A.

…

II.     Your deductible will be applied as follows:

12

A.     In the event a deductible is expressed as a percentage in the Declarations Page, Schedule A, then that percentage deductible shall be equal to a dollar amount determined by multiplying the percentage shown times the applicable Limit(s) of insurance.

B.     We will not pay for loss or damage to Covered Property until the amount of loss or damage from any one Occurrence exceeds the deductible amount on the Declarations Page, Schedule A. We will then pay the amount of loss or damage in excess of the stated deductible up to Our Limit of Insurance; however notwithstanding the above if loss or damage to Covered Property is caused by a Hurricane (as defined herein);

> Your Hurricane deductible amount will be applied on an annual aggregate basis to all Hurricane losses that occur during a calendar year; applicable per building per line of coverage if shown as such on the Declarations page, Schedule A. Your deductible amount(s) may be subject to adjustments required by the Coinsurance Condition Endorsement if such Endorsement is attached to this Policy.

### Replacement Cost Endorsement Form 500

I. Article VIII – Valuation is deleted and replaced with the provisions contained in this Endorsement.

II. Valuation

A.   We shall not pay more than the Replacement Cost (without deduction for depreciation) of the Covered Property at the time of loss. The loss or damage shall be ascertained or estimated according to such Replacement Cost value, but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality nor the amount for which You may be liable.

B.   You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a Replacement Cost basis. In the event You elect to have loss or damage settled on an Actual Cash Value basis, You may, at a later date, make a claim for the coverage on the basis of this Replacement Cost Endorsement if You notify Us of Your intent to do so within 180 days after the loss or damage to the Covered Property.

C.   We will not pay more for loss or damage to Covered Property on a Replacement Cost basis than the lesser of:

    1.      Our Limit of Insurance applicable to the damaged Covered Property; or

    2.      The cost to repair or replace at the same location, the damaged Covered Property with other property:

          a.      Of comparable material and quality; and

          b.      Used for the same purpose;

    3.      Or the amount You actually spend that is necessary to repair or replace the damaged Covered Property.

D. Notwithstanding the foregoing, in the event You elect to not repair, restore or replace the damaged Covered Property, or You do not commence the repairs, restoration or replacement of the damaged Covered Property within a reasonable period of time (which in no event shall be greater than 18 months from the date of the loss causing the damage to the Covered Property) then this Replacement Cost coverage shall not apply but rather the provisions of Article VIII of the Policy shall apply. ...

All other terms and conditions of this Policy remain.

**Article VIII   Valuation**.

We shall not pay more than the Actual Cash Value of the Covered Property at the time of loss or damage from a covered Cause of Loss. The     loss or damage shall be ascertained according to such Actual Cash Value.     Actual Cash Value will be determined based on the replacement cost of the property less depreciation (however caused) but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality at the same location nor the amount for which the Named Insured may be liable.

49.    Robert Luongo, INDIAN HARBOR's retained independent adjuster, concluded that with respect to the Monte Carlo, which is location number 5 on the policy, (305-307 NW 72nd Ave., Miami), the minimal covered damage that could be attributed to Hurricane Wilma ($16,721.31 for Building 1 and $34,675.22 for Building 2) did not exceed the subject policy's corresponding $61,200.00 named hurricane deductibles; thus no additional

payments are due to BEVERLY HILLS APARTMENTS therefor. *See Exhibit A, policy, and Exhibit D, estimate of damages.*

50.     Similarly, Robert Luongo concluded that with respect to the Loch Lomond Apartments, (355 NW 72nd Ave., Miami), the minimal covered damage that could be attributed to Hurricane Wilma ($13,588.97) did not exceed the subject policy's corresponding $91,800.00 named hurricane deductible; thus no additional payments are due to BEVERLY HILLS APARTMENTS therefor. *See Exhibit A, policy, and Exhibit E, estimate of damages.*

51.     BEVERLY HILLS APARTMENTS has failed to provide documentation to INDIAN HARBOR which establishes that Hurricane Wilma caused damages to the subject property which exceed the named hurricane deductibles.

52.     That BEVERLY HILLS APARTMENTS should not recover any monies from INDIAN HARBOR as they have failed to establish a covered loss exceeding the named hurricane deductible.

**COUNT IV**

**<u>APPRAISAL IS INAPPROPRIATE</u>**

Plaintiff realleges and reincorporates Paragraphs 1 through 39 and further states:

53.     That the subject policy provides in pertinent parts as follows:

. . .

**Article XXVI**          **Appraisal**

If You and We fail to agree as to the value of the property or amount of loss, damage or expense, each shall, on the written demand of either, select a competent and impartial appraiser and the appraisal shall be made at a reasonable

15

> time and place. The appraisers shall first select a competent and impartial umpire and failing for fifteen (15) days to agree upon such umpire then, on the request of the Named Insured or the Company, such shall be selected by a judge of a court of record in the state in which such appraisal is pending. The appraisers shall then appraise the loss, stating separately the value at the time of loss and the amount of loss and failing to agree, shall submit their differences to the umpire. A decision agreed to by any two shall determine the amount of loss and shall be binding. You and We shall each pay our chosen appraiser and shall bear equally the other expenses of the appraisal and umpire. We shall not be held to have waived any of Our rights by any act relating to appraisal.

. . .

54.     BEVERLY HILLS APARTMENTS has failed to establish that there is a dispute as to the amount of loss caused by wind, or that the amount of loss exceeds the named hurricane deductible for locations 1, 2, and 5.

WHEREFORE, Plaintiff, INDIAN HARBOR requests that this Court take jurisdiction of this matter and declare the rights and duties of the parties herein; and that this Court adjudicate and declare that BEVERLY HILLS APARTMENTS claim is barred due to its late notice; that BEVERLY HILLS APARTMENTS has not shown covered losses in an amount that exceeds the named hurricane deductibles; that BEVERLY HILLS APARTMENTS has failed to cooperate in the investigation of the claim and must supply INDIAN HARBOR with the requested documentation supporting their alleged damages pursuant to the subject policy of insurance; that appraisal is inappropriate for this case at this time; and that INDIAN HARBOR is not obliged to indemnify BEVERLY HILLS APARTMENTS for said loss.

16

## DEMAND FOR JURY TRIAL

Plaintiff, INDIAN HARBOR demands trial by jury on all issues so triable.

**DATED** this 23rd day of October 2009.

Respectfully Submitted,

MICHAELA D. SCHEIHING, ESQUIRE
Florida Bar Number 0931853
mscheihing@boehmbrown.com
MARJORIE M. SALAZAR, ESQUIRE
Florida Bar Number 0939021
msalazar@boehmbrown.com
Boehm, Brown, Fischer, Harwood, Kelly &
      Scheihing, P.A.
113 Executive Circle
Daytona Beach, Florida 32114
Telephone: (386) 258-3341
Facsimile: (386) 258-0252
Attorney for Plaintiff Indian Harbor Insurance Co.

17

# INDIAN HARBOR INSURANCE COMPANY



**XL INSURANCE**

| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismarck, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



| Policy Number | Page 1 of 14 | IH ICAT NPNA 50(a)(08 03) |
|---|---|---|
| ICI0976100121401 | **NAMED PERIL COMMERCIAL PROPERTY POLICY** | |
| | **DECLARATIONS PAGE AND SCHEDULE A** | 02/22/2005 |

| Policy Period | | Term | Policy Inception Date |
|---|---|---|---|
| From: | 02/01/2005   12:01 am Standard Time* | 12 months | 02/01/2005 |
| To: | 02/01/2006   12:01 am Standard Time* | | * At the Named Insured Mailing Address shown below |

**SURPLUS LINES BROKER**   5765884   (954) 978-9880

**NAMED INSURED:**
BEVERLY HILLS APARTMENTS INC LOCH LOMOND
305 NW 72ND AVENUE
MIAMI FL 33126

PROGRAM UNDERWRITERS INC
3700 COCONUT CREEK PKWY
SUITE 200
COCONUT CREEK, FL 33066

**PRODUCING AGENT:**

--------------------------------------------
--------------------------------------------
--------------------------------------------

### This Policy is comprised of the following Forms and Endorsements:

| | | | | |
|---|---|---|---|---|
| IH ICAT NPNA 50(a) (08 03) | IH ICAT NPNA 50(a) SAS (08 03) | IH ICAT NPNA 50(a) SA (08 03) | IHIC-FLSOP (06 01) | IHIC-FL-NOT (06 01) |
| IH ICAT NPNA 100 (08 03) | IH ICAT NPNA 204 (08 03) | IH ICAT NPNA 207 (08 03) | IH ICAT NPNA 300 (08 03) | IH ICAT NPNA 400 (08 03) |
| IH ICAT NPNA 400(ex) (08 03) | IH ICAT NPNA 500 (08 03) | IH ICAT NPNA 503 (08 03) | IH ICAT NPNA 600FL (08 03) | XLA Privacy (04 03) |
| IL MP 9104 0704 IHIC (07 04) | | | | |

### COMMON POLICY CONDITIONS

In return for the payment of the premium and fees, and subject to all the terms of this Policy, We agree with You to provide the insurance as stated in this Policy.

**See Schedule A attached to this Declarations Page for Coverages, Deductibles and Limits of Insurance.**
TO FILE A CLAIM 24 HOURS/DAY, PLEASE FAX TO 1-866-325-2142 OR CALL 1-866-780 COPY

Your Annual Premium and Fees are:

| | | |
|---|---|---|
| Annual Premium | $ | 44 600 00 |
| Inspection Fees | | 250 00 |
| Surplus Lines Policy Fee | | 35 00 |
| Surplus Lines Tax | | 2,244 45 |
| FSLSO Fee | | 112 22 |
| EMPA Fee | | 4 00 |
| Premium for Terrorism Coverage as it relates | | Not Selected |
| to an otherwise covered cause of loss | | |
| **Total** | $ | 47,245 67 |

*This is a true and certified copy Company Representative Andrew Date: 12/18/08*

## This Policy is only intended to provide coverage that is supplemental to coverage provided by a comprehensive property policy. This Policy contains a separate deductible for wind losses which may result in high out-of-pocket expenses to you.

THIS DECLARATIONS PAGE AND SCHEDULE A ATTACHED HERETO  TOGETHER WITH THE NAMED PERIL COMMERCIAL PROPERTY POLICY
FORM IH ICAT NPNA 100 (08 03) AND ENDORSEMENTS  IF ANY  ATTACHED HERETO  COMPLETE THIS CONTRACT OF INSURANCE

This insurance is issued pursuant to the Florida surplus lines law. Persons insured by surplus lines carriers do not have the protection of the Florida insurance Guaranty Act to the extent of any right of recovery for the obligation of an insolvent unlicensed insurer.

| | | |
|---|---|---|
| *John C. Graham* | Boulder, CO | 02/22/2005 |
| Authorized Signature | Countersigned at | Countersignature Date |
| | Insured | |
| Resident Agent Countersignature | | Countersignature Date |

**EXHIBIT**

**A**

# INDIAN HARBOR INSURANCE COMPANY



| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page 2 of 14

IH ICAT NPNA 50(a) SAS   (08 03)

| Policy Number | |
|---|---|
| ICI0976100121401 | |

**NAMED PERIL COMMERCIAL PROPERTY POLICY
DECLARATIONS PAGE AND SCHEDULE A**

02/22/2005

### Schedule A - Summary

**Policy Limit of Insurance, Any One Occurence:**                    $5,000,000

*This Policy includes a Policy Limit of Insurance equal to the amount listed above or the amount defined in Schedule A, attached hereto, whichever amount is less  This Policy will not pay more than the Policy Limit of Insurance listed above in any one occurrence  whether from a single or multiple covered Cause of Loss*

**Deductibles:**

**As respects Named Hurricane:**                              **By Building, By Line of Coverage**

*The Deductible under this Policy for the peril listed above applies By Building, By Line of Coverage, subject to any Minimum or Maximum deductibles listed below*

    **Minimum Deductible as respects Named Hurricane   $25,000:**        **By Policy**

*This Policy includes a minimum deductible equal to the amount listed above or the amount defined in Schedule A attached hereto  whichever amount is greater*

**As respects All Other Wind and Hail Loss:**                    **By Building, By Line of Coverage**

*The Deductible under this Policy for All Other Wind and Hail Loss under this Policy applies By Building, By Line of Coverage subject to any Minimum or Maximum deductibles listed below*

**Minimum Deductible as respects All Other Wind and Hail   $25,000:**     **By Policy**

*This Policy includes a minimum deductible equal to the amount listed above or the amount defined in Schedule A attached hereto  whichever amount is greater*

insured

2008-1066
000507

# INDIAN HARBOR INSURANCE COMPANY

 **INSURANCE**

| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page 3 of 14

IH ICAT NPNA 50(a) SA (08 03)

**Policy Number**
ICI0976100121401

## NAMED PERIL COMMERCIAL PROPERTY POLICY
## DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

**Schedule A**

**Location #:** 1
**Building #:** 1          201-211 NW 72nd Ave, Building 1  Miami  FL 33126

| | |
|---|---|
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

|  |  |  | Deductible | |
|---|---|---|---|---|
| **Location #: 1   Building #: 1   Covered Property** | **Limit of Insurance** | | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A:  Building | $1,972,000 | | $59,160 representing 3% of Coverage A Limit of Insurance | $59,160 representing 3% of Coverage A Limit of Insurance |
| Coverage B:  Business Personal Property | N/A | | N/A | N/A |
| Coverage C:  Tenant Improvements and Betterments | N/A | | | |
| Coverage E:  Business Income; Rental Value; Extra Expense | $232,694 | | $25,000 representing minimum deductible | $25,000 representing minimum deductible |
| Coverage F:  Ordinance or Law | | | | |
| Part A: | N/A | | N/A | |
| Part B and C (Combined Limit): | N/A | | | |

Insured

**2008-1066**
**000508**

# INDIAN HARBOR INSURANCE COMPANY



| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page 4 of 14

IH ICAT NPNA 50(a) SA (08 03)

**Policy Number**

ICI0976100121401

### NAMED PERIL COMMERCIAL PROPERTY POLICY
### DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

**Schedule A**

Location #: 1
Building #: 2    201-211 NW 72nd Ave  Building 2, Miami, FL 33126

| | |
|---|---|
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

| | | | Deductible | |
|---|---|---|---|---|
| **Location #: 1    Building #: 2    Covered Property** | **Limit of Insurance** | | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A:  Building | $1,972,000 | | $59,160 representing 3% of Coverage A Limit of Insurance | $59,160 representing 3% of Coverage A Limit of Insurance |
| Coverage B:  Business Personal Property | N/A | | N/A | N/A |
| Coverage C:  Tenant Improvements and Betterments | N/A | | | |
| Coverage E:  Business Income; Rental Value; Extra Expense | $232,694 | | $25,000 representing minimum deductible | $25,000 representing minimum deductible |
| Coverage F:  Ordinance or Law | | | | |
| Part A: | N/A | | N/A | |
| Part B and C (Combined Limit): | N/A | | | |

Insured

2008-1066
000509

# INDIAN HARBOR INSURANCE COMPANY

 **INSURANCE**

| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page 5 of 14                  IH  ICAT NPNA 50(a) SA  (08 03)

**Policy Number**

ICI0976100121401

### NAMED PERIL COMMERCIAL PROPERTY POLICY
### DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

**Schedule A**

---

Location #:  1

Coverage D:  Additional Property Coverage     No Additional Property Coverage at this location

Insured

2008-1066
000510

# INDIAN HARBOR INSURANCE COMPANY



| | ADMINISTRATIVE OFFICE | HOME OFFICE | |
| --- | --- | --- | --- |
| | Seaview House | 316 N. 5th Street | |
| | 70 Seaview Avenue | Bismark, ND 19801-1147 | |
| | Stamford, CT 06902-6040 | (800) 688-1840 | |
| | (800) 688-1840 | | |



Page 6 of 14

IH ICAT NPNA 50(a) SA (08 03)

| Policy Number | |
| --- | --- |
| ICI0976100121401 | |

## NAMED PERIL COMMERCIAL PROPERTY POLICY
## DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

### Schedule A

**Location #:  2**
**Building #:  1**      355 NW 72nd Ave  Building 1  Miami  FL 33126

| | |
| --- | --- |
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

| | | | Deductible | |
| --- | --- | --- | --- | --- |
| **Location #:  2    Building #:  1**    Covered Property | Limit of Insurance | | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A:  Building | $3,060,000 | | $91,800 representing 3% of Coverage A Limit of Insurance | $91,800 representing 3% of Coverage A Limit of Insurance |
| Coverage B:  Business Personal Property | N/A | | N/A | N/A |
| Coverage C:  Tenant Improvements and Betterments | N/A | | | |
| Coverage E:  Business Income; Rental Value; Extra Expense | $310,259 | | $25 000 representing minimum deductible | $25 000 representing minimum deductible |
| Coverage F:  Ordinance or Law | | | | |
| Part A: | N/A | | N/A | |
| Part B and C (Combined Limit): | N/A | | | |

insured

2008-1066
000511

# INDIAN HARBOR INSURANCE COMPANY



**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
316 N. 5th Street
Bismark, ND 19801-1147
(800) 688-1840



Page 7 of 14

IH  ICAT NPNA 50(a) SA (08 03)

| Policy Number | NAMED PERIL COMMERCIAL PROPERTY POLICY DECLARATIONS PAGE AND SCHEDULE A | 02/22/2005 |
|---|---|---|
| ICI0976100121401 | | |

**Schedule A**

Location #:  2

Coverage D:  Additional Property Coverage    No Additional Property Coverage at this location

Insured

2008-1066
000512

# INDIAN HARBOR INSURANCE COMPANY

 INSURANCE

ADMINISTRATIVE OFFICE
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

HOME OFFICE
316 N. 5th Street
Bismark, ND 19801-1147
(800) 688-1840



Page 8 of 14                    IH ICAT NPNA 50(a) SA (08 03)

| Policy Number |
| --- |
| ICI0976100121401 |

## NAMED PERIL COMMERCIAL PROPERTY POLICY
## DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

### Schedule A

**Location #: 3**
**Building #: 1**    8707-8711 SW 97 Ave, Building 1  Miami  FL 33173

| | |
| --- | --- |
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

|  |  |  | Deductible | |
| --- | --- | --- | --- | --- |
| **Location #: 3    Building #: 1** | **Covered Property** | **Limit of Insurance** | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A:  Building | | $1,841,472 | $55,244 representing 3% of Coverage A Limit of Insurance | $55,244 representing 3% of Coverage A Limit of Insurance |
| Coverage B:  Business Personal Property | | N/A | N/A | N/A |
| Coverage C:  Tenant Improvements and Betterments | | N/A | | |
| Coverage E:  Business Income; Rental Value; Extra Expense | | $426,605 | $25,000 representing minimum deductible | $25,000 representing minimum deductible |
| Coverage F:  Ordinance or Law | | | N/A | |
| | Part A: | N/A | | |
| | Part B and C (Combined Limit): | N/A | | |

Insured

**2008-1066**
**000513**

## INDIAN HARBOR INSURANCE COMPANY



**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
316 N. 5th Street
Bismark, ND 19801-1147
(800) 688-1840



Page 9 of 14

IH  ICAT NPNA 50(a) SA (08 03)

| Policy Number |
| --- |
| ICI0976100121401 |

### NAMED PERIL COMMERCIAL PROPERTY POLICY
### DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

**Schedule A**

Location #: 3

Coverage D:  Additional Property Coverage     No Additional Property Coverage at this location

Insured

2008-1066
000514

# INDIAN HARBOR INSURANCE COMPANY

 INSURANCE

**ADMINISTRATIVE OFFICE**
Seaview House
70 Seaview Avenue
Stamford, CT 06902-6040
(800) 688-1840

**HOME OFFICE**
316 N. 5th Street
Bismark, ND 19801-1147
(800) 688-1840



Page 10 of 14

IH  ICAT NPNA 50(a) SA  (08 03)

| Policy Number |
|---|
| ICI0976100121401 |

## NAMED PERIL COMMERCIAL PROPERTY POLICY
## DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

### Schedule A

**Location #: 4**
**Building #: 1**     611-615 Forrest Drive, Building 1  Miami  FL 33166

| | |
|---|---|
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

| Location #: 4   Building #: 1   Covered Property | Limit of Insurance | Deductible | |
|---|---|---|---|
| | | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A:  Building | $1,627,776 | $48,833 representing 3% of Coverage A Limit of Insurance | $48,833 representing 3% of Coverage A Limit of Insurance |
| Coverage B:  Business Personal Property | N/A | N/A | N/A |
| Coverage C:  Tenant Improvements and Betterments | N/A | | |
| Coverage E:  Business Income; Rental Value; Extra Expense | $193,912 | $25,000 representing minimum deductible | $25,000 representing minimum deductible |
| Coverage F:  Ordinance or Law | | | |
| Part A: | N/A | N/A | |
| Part B and C (Combined Limit): | N/A | | |

Insured

2008-1066
000515

# INDIAN HARBOR INSURANCE COMPANY

 **INSURANCE**

| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page 11 of 14                    IH  ICAT NPNA 50(a) SA (08 03)

| **Policy Number** | **NAMED PERIL COMMERCIAL PROPERTY POLICY** | |
|---|---|---|
| ICI0976100121401 | **DECLARATIONS PAGE AND SCHEDULE A** | 02/22/2005 |

**Schedule A**

### Location #:  4

Coverage D:  Additional Property Coverage

| **Covered Property** | | **Limit of Insurance** |
|---|---|---|
| Pools | POOL | $38,400 |
| **Total of All Coverage D Limits of Insurance** | | **$38,400** |

### Deductible

Named Hurricane:  3% of the Sum Total of All Coverage D Limits of Insurance  or  $1 000 whichever is greater

All Other Wind/Hail:      3% of the Sum Total of All Coverage D Limits of Insurance  or  $1 000 whichever is greater

Insured

2008-1066
000516

# INDIAN HARBOR INSURANCE COMPANY

 **INSURANCE**

| | | |
|---|---|---|
| **ADMINISTRATIVE OFFICE** | **HOME OFFICE** | |
| Seaview House | 316 N. 5th Street | |
| 70 Seaview Avenue | Bismark, ND 19801-1147 | |
| Stamford, CT 06902-6040 | (800) 688-1840 | |
| (800) 688-1840 | | |



Page 12 of 14                                    IH  ICAT NPNA 50(a) SA  (08 03)

| Policy Number |
|---|
| ICI0976100121401 |

### NAMED PERIL COMMERCIAL PROPERTY POLICY
### DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

**Schedule A**

**Location #: 5**
**Building #: 1**      305-307 NW 72nd Ave, Building 2, Miami  FL 33126

| | |
|---|---|
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

| | | Deductible | |
|---|---|---|---|
| **Location #: 5   Building #: 1   Covered Property Limit of Insurance** | | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A:  Building | $2,040,000 | $61,200 representing 3% of Coverage A Limit of Insurance | $61,200 representing 3% of Coverage A Limit of Insurance |
| Coverage B:  Business Personal Property | N/A | N/A | N/A |
| Coverage C:  Tenant Improvements and Betterments | N/A | | |
| Coverage E:  Business Income; Rental Value; Extra Expense | $232,694 | $25,000 representing minimum deductible | $25,000 representing minimum deductible |
| Coverage F:  Ordinance or Law | | | |
|    Part A: | N/A | N/A | |
|    Part B and C (Combined Limit): | N/A | | |

Insured

**2008-1066**
**000517**

# INDIAN HARBOR INSURANCE COMPANY

 INSURANCE

| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page 13 of 14                                  IH  ICAT NPNA 50(a) SA (08 03)

| Policy Number | **NAMED PERIL COMMERCIAL PROPERTY POLICY** | 02/22/2005 |
|---|---|---|
| ICI0976100121401 | **DECLARATIONS PAGE AND SCHEDULE A** | |

**Schedule A**

**Location #: 5**
**Building #: 2**   305-307 NW 72nd Ave  Building 1, Miami, FL 33126

| | |
|---|---|
| Coverage Basis | Replacement Cost |
| Coinsurance | Waived |
| Windstorm protective Device Credit | N |
| Pollutant Clean Up & Removal | Included |
| Electronic Data Processing Coverage | Not Selected |
| Terrorism Coverage (as it relates to an otherwise covered cause of loss ) | Not Selected |

| | | | Deductible | |
|---|---|---|---|---|
| **Location #: 5    Building #: 2** | **Covered Property** | **Limit of Insurance** | **Named Hurricane** | **All Other Wind/Hail** |
| Coverage A: Building | | $2,040,000 | $61,200 representing 3% of Coverage A Limit of Insurance | $61,200 representing 3% of Coverage A Limit of Insurance |
| Coverage B: Business Personal Property | | N/A | N/A | N/A |
| Coverage C: Tenant Improvements and Betterments | | N/A | | |
| Coverage E: Business Income; Rental Value; Extra Expense | | $232,694 | $25,000 representing minimum deductible | $25,000 representing minimum deductible |
| Coverage F: Ordinance or Law | | | | |
| | Part A: | N/A | N/A | |
| | Part B and C (Combined Limit): | N/A | | |

Insured

2008-1066
000518

# INDIAN HARBOR INSURANCE COMPANY



| ADMINISTRATIVE OFFICE | HOME OFFICE |
|---|---|
| Seaview House | 316 N. 5th Street |
| 70 Seaview Avenue | Bismark, ND 19801-1147 |
| Stamford, CT 06902-6040 | (800) 688-1840 |
| (800) 688-1840 | |



Page **14** of **14**                    IH  ICAT NPNA 50(a) SA (08 03)

| Policy Number |
|---|
| ICI0976100121401 |

## NAMED PERIL COMMERCIAL PROPERTY POLICY
## DECLARATIONS PAGE AND SCHEDULE A

02/22/2005

### Schedule A

**Location #:  5**

Coverage D:  Additional Property Coverage        No Additional Property Coverage at this location

Insured

2008-1066
000519

This endorsement, effective 12:01 a m ,  02/01/2005   forms a part of Policy No.  ICI0976100121401

isued to   BEVERLY HILLS APARTMENTS INC LOCH LOMOND

by   INDIAN HARBOR INSURANCE COMPANY

## SERVICE OF PROCESS

The Commissioner of Insurance of the State of Florida is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy  The Company further designates:

> Theresa M. Morgan
> General Counsel
> Seaview House
> 70 Seaview Avenue
> Stamford, CT 06902-6040

as its agent in Florida to whom such process shall be forwarded by the Commissioner of  Insurance.

All other terms and conditions of this policy remain unchanged.

_John C. Graham_
(Authorized Representative)

IH  IC-FLSOP     (6/01)

2008-1066
000520

**NOTICE TO POLICYHOLDERS**

**FLORIDA**

FOR INFORMATION, OR
TO MAKE A COMPLAINT, CALL:
1-800-688-1840
INDIAN HARBOR INSURANCE COMPANY
SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT  06902-6040

IH IC-FL-NOT   (6/01)

# INDIAN HARBOR INSURANCE COMPANY

## NAMED PERIL COMMERCIAL PROPERTY COVERAGE FORM

### Part I - General Provisions

**Article I**   **Insuring Agreement.**

This Policy insures against direct physical loss or damage to Covered Property the direct result of a Cause of Loss covered hereunder as provided and defined by the attachment of one or multiple Cause of Loss Coverage Endorsement Forms  while the property is located at a Covered Location.

**Article II**   **Policy Effective Date.**

This Policy covers loss or damage to Covered Property from all Causes of Loss covered herein arising out of losses occurring during the Policy Period shown in the Declarations Page

**Article III**   **Cancellation Provisions.**

See the "State Specific" Endorsement Form 600 that is attached to this Policy

**Article IV**   **Property or Interest Covered.**

This Policy covers only the property or interests (hereinafter collectively or individually referred to as Covered Property) described in this Article IV and only to the extent that such property or interests are shown as covered in the Declarations Page  Schedule A, and except as hereinafter excluded

**Coverage A:**   **Building(s) and/or Structure(s)**  including additions and extensions permanently attached to the building(s) or structure(s); and all property belonging to and constituting a permanent part of said building(s) and/or structure(s) and pertaining to the service  upkeep  maintenance and operation thereof

**Coverage B:**   **Business Personal Property** defined as Stock (as defined herein); materials and supplies usual or incidental to the Operations of the Named Insured and like property of others in the Named Insured's care, custody or control and for which the Named Insured is legally liable; furniture  fixtures, equipment and machinery that are the property of the Named Insured  and like property of others in the care  custody or control of the Named Insured and for which the Named Insured is legally liable   Business Personal Property is covered only so long as it is located at a Covered Location

**Coverage C:**   The Named Insured's interest in **Tenant Improvements and Betterments** made at the expense of the Named Insured and including fixtures, alterations, installations, or additions comprising part of a building(s) but only when such building is occupied but not owned by the Named Insured

**Coverage D:**   **Additional Property Coverage** defined as property (which is not a permanent part of a building or structure covered under Coverage A of this Article IV) that is located at a Covered Location and is specifically identified in the Declarations Page  Schedule A  Additional Property Coverage

**Coverage E:**   **Loss of Business Income; Rental Value; Extra Expense** as provided in Endorsement Form IH ICAT NPNA 300

**Coverage F:**   **Ordinance or Law Coverage** as provided in Endorsement Form IH ICAT NPNA 302

**Article V**   **Coverage Extensions.**

**A**   **Debris Removal**

1   This Policy covers expenses incurred in the removal of debris when the debris is directly caused by a covered Cause of Loss  These expenses will be paid only if they are reported to Us within 180 days of the date the covered Cause of Loss occurred

2   The most that We will pay under this coverage extension for debris removal is 25% of the amount We actually pay for the direct physical loss or damage to Covered Property under Coverage Sections A  B  C and D  as applicable, defined in Article IV  Payments We make under this debris removal coverage extension are included in and part of the Limit of Insurance of Coverage Sections A, B, C, and D  This coverage extension does not increase the Limit of Insurance shown in the Declarations Page  Schedule A

2008-1066
000522

3      Notwithstanding the foregoing in the event that the sum of direct physical loss or damage under Coverage Sections A, B, C and D plus the cost of debris removal exceeds the sum of the Limit of Insurance under Coverage Sections A, B  C and D, then We will pay up to an additional $10 000 for debris removal at each Covered Location in any one occurrence  but in no event shall Our coverage for debris removal exceed an amount equal to 25% of what We actually pay for direct physical loss or damage under Coverage Sections A  B  C and D

4      This coverage extension for debris removal does not cover the loss  damage or expense to:

    a    Extract Pollutants from land or water;

    b    Remove  restore or replace polluted land or water;

    c    Test for, monitor, clean up, remove, restore, replace  contain  treat  detoxify or neutralize  or in any way respond to or access the effects of Pollutants;

    d    Investigate or defend any loss, injury  or damage  or for any costs  fine, or penalty or for any expense or claim or suit related to any of the above

Pollutants means any solid  liquid, gaseous or thermal irritant or contaminant  including smoke  vapor  soot, fumes  acids  alkalis  chemicals and waste  Waste includes materials to be recycled  reconditioned or reclaimed

B    **Preservation of Property**

If it is necessary to move Covered Property from a Covered Location to preserve it from loss or damage from a covered Cause of Loss under this Policy  then We will pay for any direct physical loss or damage to that Covered Property from a covered Cause of Loss under this Policy while it is being moved or while temporarily stored at another location, but only if the loss or damage to the Covered Property occurs within 30 days after the Covered Property is first moved  This coverage extension does not increase Our Limit of Insurance for Covered Property as shown in the Declarations Page, Schedule A

**Article VI**    **Covered Location.**

A Covered Location  is defined to mean the premises at the address or series of addresses of a building(s) or structure(s) insured hereunder  or the premises at the address or series of addresses of a building(s) or structure(s) housing Business Personal Property insured hereunder  as shown in the Declarations Page  Schedule A

**Article VII**    **Limit of Insurance.**

A    Our Limit of Insurance shall not exceed the Limit of Insurance shown in the Declarations Page  Schedule A

B    If two or more Causes of Loss covered by this Policy contribute to loss or damage to Covered Property in the same Occurrence  We will pay no more than the lesser of (i) the actual amount of the loss or damage to the Covered Property  or (ii) Our Limit of Insurance for the Covered Property as shown in the Declarations Page, Schedule A

**Article VIII**    **Valuation.**

We shall not pay more than the Actual Cash Value of the Covered Property at the time of loss or damage from a covered Cause of Loss  The loss or damage shall be ascertained according to such Actual Cash Value.  Actual Cash Value will be determined based on the replacement cost of the property less depreciation (however caused)  but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality at the same location  nor the amount for which the Named Insured may be liable.

**Article IX**    **Deductible.**

See the Deductible Endorsement Form that is attached to this Policy

**Article X**    **Property and Interests Excluded.**

Unless specifically added by Endorsement, or included as Covered Property under Coverage D of Article IV and specifically listed in the Declarations Page, Schedule A  the following property and interests are not Covered Property and are excluded from coverage under this Policy:

1    Accounts, bills  currency  deeds  food stamps  money  notes  or other evidences of debt  securities, stamps, original drawings and specifications  letters of credit  passports  tickets (including lottery tickets)  manuscripts  bullion  gift certificates and valuable papers

2008-1066
000523

2   Fine arts jewelry precious stones antiques and furs

3   Animals birds and fish (unless owned by others and boarded by You or if owned by You, only as Stock while inside of buildings) growing plants trees or shrubs (except when held for sale or when used for decorative purposes inside buildings) and growing crops or lawns

4   Motor vehicles licensed or designed principally for road or highway use motorcycles motor scooters and other similar vehicles licensed or designed principally for road or highway use

5   Watercraft and aircraft

6   Mobile homes and manufactured homes

7   Trailers designed to haul or transport goods materials, vehicles and any other substance or product

8   Property sold by You under conditional sales trust agreements installment payments or other deferred payment plans after delivery to customers

9   Property in transit except as provided in Article V Paragraph B and railroad rolling stock

10  Steam boilers steam pipes steam turbines, steam engines or pressure or vacuum vessels, all whether owned, leased or operated by You if loss is caused by bursting, bulging rupture, melting burning cracking implosion or explosion of such objects or an internal cause which makes necessary repair or replacement of the object or part

11  Machines or machinery if loss is caused by rupture bursting or disintegration or by centrifugal centripetal or reciprocating force

12  Machinery and equipment in the open including gas pumps

13  Contractors' equipment, including trailers used to transport such equipment

14  Electronic data processing systems, their equipment and component parts, including computers, electronic accounting machines, all supporting machinery, magnetic tapes discs cards and any storage device, and electronic data processing media including data, records, all software including procedures and programs or source material of any kind and all forms of converted data or programs and/or instruction vehicles used in Your data processing operations

15  Buildings or structures in the course of construction, including materials and supplies except alterations and repairs on or within the existing walls of existing buildings or structures insured by this Policy

16  Power transmission and/or feeder lines

17  Land (including but not limited to land on which the Covered Property is located) or water howsoever and wherever located or any interest or right therein

18  Contraband, or property in the course of illegal transportation or trade

19  The cost to research replace or restore any and all information pertaining to valuable papers and records including but not limited to valuable papers and records which exist on electronic digital or magnetic media

20  Grain hay straw or other crops while outside of buildings

21  Fences including property line walls latticework and trellises

22  Radio or television antennas and satellite dishes including their lead-in wiring masts or towers all while outside of buildings

23  Bridges dams tunnels roadways walks walkways patios or other paved surfaces

24  The cost of excavations, grading backfilling or filling

25  Foundations of buildings structures, machinery or boilers if their foundations are below:

    a   The lowest basement floor; or

    b   The surface of the ground if there is no basement

26  Bulkheads seawalls, pilings, piers wharves or docks that are not a part of a covered foundation of a building and/or structure covered under Coverage A of Article IV

27  Retaining walls

2008-1066
000524

28   Underground pipes  pipelines  flues or drains

29   Pools (whether in the ground or above the ground) including spas  hot tubs and jacuzzis located outdoors  ponds  lakes  waterfalls or fountains

30   Signs (attached and not attached to a building) unless held for sale and Coverage B of Article IV is applicable to such signs

31   Awnings and canopies  whether attached or not attached to a building or structure  and including awnings and canopies over gas pumps.

32   Light poles and street signs

33   Boardwalks  catwalks  trestles and bridges

34   Greenhouses, shade houses  hot houses and glass houses

Other buildings and structures at a Covered Location not specifically described and included as Covered Property in the Declarations Page  Schedule A

**Article XI      Excluded Causes of Loss.**

This Policy provides coverage for direct physical loss or damage to Covered Property caused by only the (those) Covered Cause(s) of Loss defined in the Cause of Loss Coverage Endorsement Form(s) attached to this Policy  Loss or damage from all other Causes of Loss  whether caused directly or indirectly, are excluded from coverage under this Policy  The exclusions listed in this Article XI are added to this Policy for clarity; the inclusion of such exclusions shall in no way limit the excluded Causes of Loss applicable to this Policy nor in any way expand the Causes of Loss covered by this Policy  Furthermore loss, expense  and damage the result of a Cause of Loss included in this list of exclusions are excluded from coverage hereunder, whether a covered Cause of Loss that is covered by this Policy contributes concurrently or in any sequence to any loss  expense, or damage.

1   Earth movement, including but not limited to loss, damage or expense caused by  resulting from, contributing to or aggravated by Earthquake  landslide  mudslide  mudflow  rockslide, earth sinking  rising  shifting or settling and any resulting need for land stabilization, but not including Subsidence or Sinkhole Collapse.

   Earthquake means a vibration-generating rupture event caused by displacement within the earth's crust through release of strain associated with tectonic processes and includes effects such as ground shaking, liquefaction, seismically-induced land sliding and damaging amplification of ground motion  Earthquake does not mean or include tsunami or volcanic eruption

   Tectonic processes means adjustments of the earth's crust in response to regional stress conditions initiated by dynamic forces within the earth's interior

   Subsidence or Sinkhole Collapse means the sinking or collapse of land.

2   Tsunami.

3   Subsidence or Sinkhole Collapse  Subsidence or Sinkhole Collapse means the sinking or collapse of land

4   Sprinkler leakage; and water, other liquids  power or other material that leaks or flows from fire protection systems or other equipment  including damage from leaking fire protective sprinklers

5   Flood  which is defined to include:

   Waves  storm surge  tide or tidal water, and the rising (including the overflow or breaking of boundaries) of lakes  ponds  reservoirs, rivers, harbors  streams and other similar bodies of water or surface waters  rain accumulation or run off  or by spray from any of the foregoing  whether driven by wind or not  and including:

   a   The backing up of sewers or drains;

   b   Water below the surface of the ground  including that which exerts pressure on or flows, seeps, or leaks through sidewalks, driveways  foundations  walls  basement or other floors  or through doors  windows or any other opening in such driveways  sidewalks  foundations  walls  or floors

6   Water  liquid or any other substance that backs up or overflows from a sewer  sump or drain

7   Water below the surface of the ground, including that which exerts pressure on or flows, seeps  or leaks through sidewalks, driveways  foundations  walls  floors or paved surfaces  or through doors  windows or any other openings in such sidewalks  driveways  foundations  walls  floors or paved surfaces.

2008-1066
000525

8    Riot, civil commotion insurrection rebellion revolution civil war usurped power or action taken by governmental authority in hindering combating or defending against any such occurrence, seizure or destruction under quarantine or customs regulation confiscation by order of any government or public authority or risks of contraband or illegal transportation or trade

9    Dampness of atmosphere dryness of atmosphere changes in or extremes of temperature shrinkage, evaporation, loss of weight, rust or corrosion, exposure to light contamination, fungus mold mildew wet rot, dry rot, deterioration decay hidden or latent defect, change in flavor or color or texture or finish whether loss or damage from such excluded Causes of Loss is direct or indirect, proximate or remote or be in whole or in part caused by contributed to or aggravated by a Cause of Loss covered under this Policy

10   Enforcement of any ordinance or law regulating the reconstruction use or repair of any Covered Property or requiring the demolition or tearing down of any property including the cost of enforcement of any ordinance or law regulating the removal of debris

11   Hostile or warlike action including but not limited to acts of terrorism in time of peace or war by any individual group government or sovereign power (de jure or de facto) including action in hindering combating or defending against an actual impending or expected attack:

   a    By any individual group, government or sovereign power (de jure or de facto) or by any authority maintaining or using military naval or air forces; or

   b    By military naval or air forces; or

   c    By any agent of any such government power authority or forces; or

   d    Any weapon of war employing atomic fission or radioactive force whether in time of peace or war

12   Nuclear reaction or nuclear radiation or radioactive contamination all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote or be in whole or in part caused by contributed to or aggravated by a Cause of Loss covered under this Policy.

13   The failure of power or other utility service however caused and wherever such failure should occur

14   The mere existence, occurrence discharge dispersal seepage migration release escape or use of Pollutants This includes but is not limited to loss damage or expense to:

   a    Extract Pollutants from land or water;

   b    Remove, restore or replace polluted land or water;

   c    Test for, monitor, clean up, remove restore replace contain treat detoxify or neutralize or in any way respond to or access the effects of Pollutants;

   d    Investigate or defend any loss injury or damage or for any costs fine or penalty or for any expense or claim or suit related to any of the above

        Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor soot fumes acids alkalis chemicals and waste Waste includes materials to be recycled reconditioned or reclaimed

15.  Any loss damage or expense, or increase in loss damage or expense caused by or resulting from:

   a.   The removal, encapsulation, covering or any manner of control or abatement from any goods products or structure of asbestos, dioxin or polychlorinated biphenyls;

   b    The demolition, increased cost of construction repair debris removal or loss of use necessitated by the enforcement of any law or ordinance regulating asbestos, dioxins or polychlorinated biphenyls;

   c    Any governmental direction or request declaring that asbestos material present in or part of or utilized on any undamaged portion of the Named Insured's property can no longer be used for the purpose for which it was intended or installed and must be removed or modified;

   d    The presence of asbestos in any building or structure whether covered or not covered by this Policy

16   Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from ventilation heating, air conditioning or sick building condition(s). Sick building condition(s) as used herein is understood to mean a building(s) or structure(s) with actual or alleged conditions which create or may create an environment which is or is suspected to be unhealthy in any way to any person or other living thing

**2008-1066
000526**

17   Any loss, damage or expense, or increase in loss, damage or expense caused by or resulting from loss of alteration of or damage to; or a reduction in the functionality availability or operation of:

    a   A computer system, hardware program, software, data information repository microchip integrated circuit, or similar device in computer equipment or non-computer equipment; or

    b   Telecommunications and cellular equipment including any devices required to connect computer and non-computer voice. video or data equipment to physical and wireless networks whether the property of the policyholder or not

**Article XII**    **Other Insurance.**

In the event the Named Insured has other insurance (meaning insurance in the name of the Named Insured, including insurance not written upon the identical, terms, conditions, and provisions contained in this Policy) protecting Covered Property hereunder against the same Cause of Loss covered by this Policy and such other insurance is in force at the time of any loss hereunder, then the provisions of this insurance shall not apply unless and until the liability of the other insurance has been fully exhausted and then only to the extent the Named Insured has not been fully indemnified by such other insurance The provisions of this Article do not increase Our Limit of Insurance in this Policy

**Article XIII**    **Records and Inventory; Examination of Records.**

The Named Insured shall keep accurate books records and accounts in the following manner:

    A.   A detailed and itemized inventory record of all Covered Property hereunder shall be maintained and physical inventory shall be taken periodically at intervals not more than twelve (12) months apart

    B   The Named Insured shall, as often as may be reasonably required during the term of this Policy and for one (1) year thereafter produce for examination by Us or Our duly authorized representative all the books and records inventories and accounts relating to Covered Property hereunder

**Article XIV**    **Concealment, Misrepresentation and Fraud.**

This entire Policy shall be void if whether before or after a loss. You have concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof or Your interest therein or in case of any fraud or false swearing by You relating thereto

## Part II - Loss Provisions

**Article XV**    **Notice of Loss.**

You shall as soon as practicable, report in writing to Us or Our representative every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with Us or Our representative a signed detailed and sworn proof of loss within 60 days after Our request for such sworn proof of loss We will provide You with the necessary forms

**Article XVI**    **Responsibility of Named Insured; Protection of Property.**

    A   You shall take all reasonable steps to protect Covered Property from further damage following loss or damage to Covered Property Notwithstanding the foregoing, We will not pay for any subsequent loss damage or expense to such Covered Property the result of a Cause of Loss not covered under this Policy

    B   You shall keep a record of expenses incurred to protect the Covered Property following loss for consideration in the settlement of the claim

    C   If feasible You shall set the damaged property aside and in the best possible order for examination

    D   The provisions of this Article do not increase Our Limit of Insurance in this Policy

**Article XVII**    **Assistance and Cooperation of the Named Insured.**

You shall cooperate with Us in the investigation or settlement of any claim Furthermore in the event this Policy covers Your liability You shall cooperate with Us and upon Our request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence and obtaining the attendance of witnesses and in the conduct of suits You shall not voluntarily make payment assume any obligation or incur any expense without Our written consent

**Article XVIII**    **Abandonment.**

There can be no abandonment of any property to Us

2008-1066
000527

**Article XIX**   **Suit.**

No suit  action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless:

A.    You are in full compliance with all of the terms of this Policy; and

B.    The same be commenced within twelve (12) months after the occurrence which gives rise to the claim provided  however, that if by the laws of the state within which this Policy is issued such limitation is invalid, then any such claims shall be void unless such action  suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state

**Article XX**   **Claims Against Third Parties.**

In the event of any loss, damage or expense to Covered Property hereunder, You shall  as soon as practically possible  make claim in writing against the carrier(s)  bailee(s) or other third party who may be responsible  in whole or in part  for the loss  damage or expense or for any increase in loss  damage  or expense

**Article XXI**   **Subrogation Waiver.**

This insurance shall not be prejudiced by agreement made by You releasing or waiving Your right to recovery against third parties responsible for loss  damage or expense to Covered Property  except under the following conditions:

A    Whether made before or after loss has occurred  such agreement must be in writing and must release or waive Your entire right of recovery against such third party

B    If made before loss has occurred  such written agreement may run in favor of any third party

C    If made after loss has occurred  such written agreement may run only in favor of a third party falling within one of the following categories at the time of loss:

    1    A third-party Named Insured under this Policy; or

    2    A business firm which:

        a    Is owned or controlled by You or in which You own capital stock or other proprietary interest; or

        b    Owns or controls You or owns or controls capital stock or other proprietary interest in the Named Insured.

**Article XXII**   **Examination Under Oath.**

A    You shall, as often as may be reasonably required, exhibit to any person designated by Us all that remains of any Covered Property and shall submit  and insofar as is within Your power cause Your employees and others to submit  to examinations under oath by any person named by Us  Furthermore, as often as may be reasonably required  You shall produce for examination all writings  books of account  bills  invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by Us or Our representative  and shall permit extracts and copies thereof to be made

B    No such examinations under oath or examination of books or documents  nor any other act by Us or any of Our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which We might otherwise have with respect to any loss or claim; all such examinations and acts shall be deemed to have been made or done without prejudice to Our liability

**Article XXIII**   **Privilege To Adjust With Owner.**

In the event of loss or damage to property of others held by You for which claim is made under this insurance  the right to adjust and settle such loss or damage with the owner or owners of the damaged property is reserved to the Company and the receipt of payment made by Us in settlement of such claim by the owner or owners in satisfaction thereof shall be in full satisfaction of any claim of the Named Insured  If legal proceedings are taken to enforce a claim against You as respects any such loss or damage, We reserve the right, at Our option and without expense to You  to conduct and control the defense on behalf of and in the name of the Named Insured  No action of the Company in such regard shall increase Our liability under this Policy  nor increase the Limit of Insurance specified in the Declarations Page  Schedule A

**Article XXIV**   **Pair, Set Or Parts.**

A    In event of loss of or damage to any part of Covered Property consisting  when complete for use or sale  of several parts  We shall only be liable for the value of the part lost or damaged

B    Notwithstanding the foregoing  for any article or articles which are a part of a pair or set, the measure of loss of or damage to such article or articles shall be a reasonable and fair proportion of the total value of the pair or set  giving consideration to the importance of said article or articles  but in no event shall such loss  damage or expense be construed to mean total loss of the pair or set

2008-1066
000528

**Article XXV**       **Labels.**

In the event of loss or damage to labels, capsules or wrappers insured hereunder the loss shall be adjusted on the basis of an amount sufficient to pay the cost of new labels capsules or wrappers

**Article XXVI**      **Appraisal.**

If You and We fail to agree as to the value of the property or amount of loss, damage or expense, each shall on the written demand of either, select a competent and impartial appraiser and the appraisal shall be made at a reasonable time and place The appraisers shall first select a competent and impartial umpire and failing for fifteen (15) days to agree upon such umpire then, on the request of the Named Insured or the Company, such shall be selected by a judge of a court of record in the state in which such appraisal is pending The appraisers shall then appraise the loss stating separately the value at the time of loss and the amount of loss and failing to agree, shall submit their differences to the umpire A decision agreed to by any two shall determine the amount of loss and shall be binding You and We shall each pay our chosen appraiser and shall bear equally the other expenses of the appraisal and umpire We shall not be held to have waived any of Our rights by any act relating to appraisal.

**Article XXVII**     **Company's Options.**

In the event of loss or damage to Covered Property under this Policy at Our option We will either:

Pay the value of the damaged Covered Property; or

Pay the cost of repairing, rebuilding or replacing with other property of like kind and quality the damaged Covered Property subject to Paragraph B of this Article; or

Take all or any part of the Covered Property at an agreed or appraised value; or

Repair rebuild or replace the Covered Property with other property of like kind and quality subject to Paragraph B of this Article

The cost to repair rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property

We will give You notice of Our intentions within 60 days after we receive Your sworn proof of loss

We will not pay You more than Your financial interest in the Covered Property

**Article XXVIII**    **Salvage and Recoveries.**

All salvage, recoveries and payments recovered or received subsequent to the loss settlement under this Policy shall be applied as if recovered or received prior to said settlement and all necessary adjustments shall be made by the parties hereto

**Article XXIX**      **Settlement of Loss.**

We will pay for covered loss or damage within 60 days after We receive Your signed sworn proof of loss and You have complied with all of the terms of this Policy and:

A    We have reached agreement with You on the amount of loss; or

B    An appraisal award has been made

**Article XXX**       **No Benefit To Others.**

This insurance shall in no way inure directly or indirectly to the benefit of any carrier bailee or any other person or entity

2008-1066
000529

## Part I - Other Provisions

**Article XXXI**    **Inspection of Property and Operations.**

We and any person or organization making inspections on Our behalf shall be permitted but not obligated, to inspect Your property and operations at any time before or after loss. Neither the right of the Company and any person or organization to make such inspection nor the making thereof, nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the Named Insured or others to determine or warrant that such property or operations are safe or healthful, or comply with any laws, rules or regulations nor does such inspection constitute a guarantee of an accurate or complete valuation of such Covered Property

**Article XXXII**    **Premiums and Fees.**

The first Named Insured shown in the Declarations Page is responsible for the payment of all premiums and fees due hereunder Return premiums or fees due shall be paid to the first Named Insured unless otherwise required by law

**Article XXXIII**    **Mortgage.**

A    If an Additional Interest is listed as a Mortgagee in the Declarations Page then the provisions of this Article XXXIII shall apply to such Additional Interest

B    The term Mortgagee includes trustee

C    We will pay for covered loss of or damage to buildings or structures to each Mortgagee shown in the Declarations Page in their order of financial precedence

D    The Mortgagee has the right to receive loss payment even if the Mortgagee has started foreclosure or similar action on the building or structure

E    If We deny Your claim because of Your acts or because You have failed to comply with the terms of this Policy the Mortgagee will still have the right to receive loss payment if the Mortgagee:

    1    Pays any premium due under this Policy at Our request if You have failed to pay any premium due under this Policy; and

    2    Submits a signed, sworn statement of loss within 60 days after receiving notice from Us of Your failure to submit a signed sworn statement of loss; and

    3    Has notified Us of any change in ownership occupancy or substantial change in risk known to the Mortgagee.

All of the terms and conditions of this Policy will then apply directly to the Mortgagee

F    If We pay the Mortgagee for any loss or damage and deny payment to You because of Your acts or because You have failed to comply with the terms of this Policy:

    1    The Mortgagee s rights under the mortgage will be transferred to Us to the extent of the amount We pay; and

    2    The Mortgagee's right to recover the full amount of the Mortgagee s claim will not be impaired

At Our option, We may pay to the Mortgagee the whole principal on the mortgage plus any accrued interest In this event Your mortgage and note will be transferred to Us and You will pay Your remaining mortgage debt to Us

G    If We cancel this Policy We will give written notice to the Mortgagee at least:

    1    10 days before the effective date of cancellation if We cancel for Your nonpayment of premium; or

    2    30 days before the effective date of cancellation if We cancel for any other reason

H    If We elect not to renew this Policy We will give written notice to the Mortgagee at least 10 days before the expiration date of this Policy

**Article XXXIV**    **Definitions.**

When the following words appear in this Policy or any other forms or Endorsements attached hereto they mean:

1    "Us " "We" 'Our' and 'the Company" mean INDIAN HARBOR INSURANCE COMPANY

2    "You", "Your" and "the Named Insured" mean the Named Insured(s) identified in the Declarations Page

3    "Pollutants" means any solid liquid, gaseous or thermal irritant or contaminant, including smoke, vapor soot fumes acids, alkalis chemicals and waste Waste includes materials to be recycled reconditioned or reclaimed;

**IH ICAT NPNA 100 (08 03)**

2008-1066
000530

4. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods including supplies used in their packing or shipping

5. "Policy" means form ICAT NPNA 100 and the Declarations Page including Schedule A, and all Endorsements and other forms attached thereto. See the Declarations Page for a listing of Endorsements included with this Policy

6. Covered Property is as defined in Article IV and as specifically listed in the Declarations Page Schedule A

7. Covered Location is as defined in Article VI

8. Limit of Insurance is as defined in Article VII

9. Operations means Your business activities occurring at the Covered Location

10. Occurrence means any one disaster, accident or loss or series of disasters, accidents or losses which are covered Causes of Loss, are one event and occur within the area of one state of the United States and states contiguous thereto (however as regards Earthquake, the epicenter does not need to be within these territorial confines). The duration and extent of an Occurrence is limited to all loss or damage sustained by Covered Property occurring during any period of 168 consecutive hours directly caused by the same event, except that the term Occurrence as regards loss or damage from wind and hail shall mean all loss sustained by Covered Property occurring during any period of 72 consecutive hours directly caused by the same event and such event need not be limited to one state or states contiguous thereto

**Article XXXV    Forms and Endorsements; Changes.**

A.    Forms and Endorsements: In addition to this form, IH ICAT NPNA 100, there are Endorsements and a Declarations Page (including Schedule A) applicable to this Policy. These forms and all Endorsements comprise this Policy. See the Declarations Page for a listing of Endorsements

B.    Changes: This Policy contains all of the agreements between the Named Insured and the Company concerning the insurance coverage provided hereunder. The Named Insured shown in the Declarations Page is authorized to make changes in the terms of this Policy with the Company's consent. This Policy's terms can be amended or waived only by Endorsement issued by the Company and made a part of this Policy

IN WITNESS WHEREOF the Company has caused this Policy to be signed by its President and Secretary and countersigned on the Declarations by a duly authorized agent of the Company.

*Theresa M. Morgan*                    *Nichol M. Brown, Jr.*

SECRETARY                              PRESIDENT

2008-1066
000531

# INDIAN HARBOR INSURANCE COMPANY

## WIND AND HAIL CAUSE OF LOSS COVERAGE ENDORSEMENT FORM 204

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

I.   This Policy provides coverage for loss or damage directly caused by wind and hail

II.  Notwithstanding the foregoing, coverage provided by this Endorsement does not include loss, damage or expense to the interior or exterior of any building or structure, or the property inside the building or structure  caused by rain, snow  sand, or dust  whether driven by wind or otherwise unless the building or structure first sustains wind or hail damage to its roof  walls  doors  or windows  through which the rain  snow  sand  or dust enters

All other terms and conditions of this Policy remain

**IH  ICAT NPNA 204 (08 03)**

2008-1066
000532

# INDIAN HARBOR INSURANCE COMPANY

## COVERAGE EXTENSION POLLUTANT CLEAN UP AND REMOVAL ENDORSEMENT FORM 207

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

Article V of this Policy is amended and expanded to provide an additional Coverage Extension for **Pollutant Clean Up and Removal** as follows:

**Pollutant Clean Up and Removal**

1   We will pay Your expense to extract Pollutants from land or water premises if the discharge, dispersal, seepage, migration release or escape of the Pollutants is caused by or results from a covered Cause of Loss that occurs during the Policy Period  These expenses will be paid only if they are reported to Us in writing within 180 days of the date on which the covered Cause of Loss occurred

2.  This Coverage Extension does not apply to costs to test for  monitor or assess the existence  concentration or effects of Pollutants  But we will pay for testing which is performed in the course of extracting the Pollutants from land or water at a Covered Location

3   The most We will pay under this Coverage Extension for each Covered Location is $10 000 for the sum of all covered expenses arising out of a covered Cause of Loss occurring during each separate 12 month period of this Policy

4   Our Limit of Insurance for this Pollutant Clean Up and Removal Coverage Extension is in addition to Our Limit of Insurance defined in the Declarations Page  Schedule A

All other terms and conditions of this Policy remain

2008-1066
000533

# INDIAN HARBOR INSURANCE COMPANY

## LOSS OF BUSINESS INCOME; RENTAL VALUE; EXTRA EXPENSE ENDORSEMENT FORM 300

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

I    This Endorsement defines Coverage E of Article IV which  by attachment of this Endorsement  is hereby included as Covered Property in this Policy

II    We will indemnify and pay You for actual loss of Business Income and Rental Value which You sustain due to the necessary suspension of Your Operations (as defined herein) during the Period of Restoration (as defined herein)  The suspension of Your Operations must be caused by direct physical loss or damage to Covered Property at a Covered Location caused by a covered Cause of Loss occurring during the Policy Period

    A    Business Income as used herein means:

       1    Net Income (net profit before taxes, a positive amount; or net loss before taxes  a negative amount) that would have been earned or incurred had such physical loss or damage not occurred; plus

       2    Continuing normal operating expenses incurred by You  including payroll  after such physical loss or damage

       3    The amount of Your Business Income loss will be determined based upon:

          a    The Net Income of Your business before the direct physical loss or damage occurred;

          b    The likely Net Income of Your business if no physical loss or damage had occurred  but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the covered Cause of Loss on customers or on other businesses;

          c    The actual operating expenses You incur, including payroll expenses  necessary to resume normal Operations with the same quality of service that existed just before the direct physical loss or damage; and

          d.    Other relevant sources of information  including but not limited to:

             i    Your financial records and accounting procedures;

             ii.    Bills  invoices  and other vouchers; and

             iii    Deeds  liens  or contracts

    B    Rental Value as used herein means:

       1.    The total anticipated rental income from tenant occupancy of the Covered Location as furnished and equipped by You; and

       2    The amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be Your obligations; and

       3    The fair rental value of any portion of the Covered Location which is occupied by You

    C    Additional Coverages:  In addition to coverage for Business Income and Rental Value  We will pay You for the Extra Expense (as defined herein) and Civil Authority (as defined herein)  loss You sustain due to the necessary suspension of Your Operations

       1    Extra Expense:  Extra Expense means necessary and reasonable expenses You incur during the Period of Restoration that You would not have incurred if there had been no direct physical loss or damage to Covered Property caused by a covered Cause of Loss  and as further defined herein:

          a    We will pay any Extra Expense to minimize the suspension of Your business if You cannot continue Operations during the Period of Restoration

          b.    We will pay any Extra Expense to avoid or minimize the suspension of Your business and to continue Operations:

             i    At the Covered Location; or

             ii    At replacement premises or at temporary locations  including the cost of:

                (a)    Relocation expenses; and

**2008-1066**
**000534**

(b)   Costs to equip and operate the replacement or temporary locations

c   We will pay any Extra Expense to:

i.   Repair or replace any property to the extent doing so reduces the amount of loss that otherwise would have been payable under this Endorsement; or

ii   Research, replace, or restore the lost information on damaged valuable papers and records to the extent doing so reduces the amount of loss that otherwise would have been payable under this Endorsement   Valuable papers as used herein does not include Electronic Data Processing Media  which is defined to mean data  records  all software including procedures and programs or source material of any kind and all forms of converted data or programs and/or instruction vehicles used in Your data processing operations

d   The amount of Extra Expense will be determined based on:

i   All expenses that exceed the normal operating expenses that would have been incurred by Your Operations during the Period of Restoration if no direct physical loss or damage had occurred

ii   All necessary expenses that reduce the Business Income and Rental Value loss that otherwise would have been incurred

iii   We will deduct from the total of such expenses:

(a)   The salvage value that remains of any property bought for temporary use during the Period of Restoration  once Operations are resumed; and

(b)   Any Extra Expense that is paid for by other insurance

2   Civil Authority:  We will pay for the actual loss of Business Income and Rental Value You sustain  and necessary Extra Expense, caused by action of Civil Authority that prohibits access to the Covered Location due to direct physical loss or damage to property which is not Covered Property under this Policy when damage to such property is the result of a Cause of Loss covered by this Policy

a   This coverage for Business Income and Rental Value will apply for a period of up to  but not to exceed  21 days after coverage under this Civil Authority Additional Coverage begins.

b   This coverage for Extra Expense will end 21 days after the time of such Civil Authority begins or when Your Business Income and Rental Value coverage under this Civil Authority Additional Coverage ends  whichever is later

III   Extended Business Income Coverage

A   If the necessary suspension of Your Operations produces a Business Income loss payable under this Policy  We will pay for the actual loss of Business Income You incur during the period that:

1.   Begins on the date property (except finished Stock) is actually repaired, rebuilt  or replaced and Your Operations are resumed; and

2   Ends on the earlier of:

a.   The date You could restore Your Operations  with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

b   30 days after the date determined in III A 1 above

B   However  Extended Business Income coverage does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the covered Cause of Loss in the area of the Covered Location

IV   Extended Rental Value Coverage

A   If the necessary suspension of Your operations produces a Rental Value loss payable under this Policy  We will pay for the actual loss of Rental Value You incur during the period that:

1   Begins on the date property is actually repaired  rebuilt  or replaced and tenantability is restored; and

2   Ends on the earlier of:

a   The date You could restore tenant occupancy  with reasonable speed  to the level which would generate the Rental Value that would have existed if no direct physical loss or damage had occurred; or

b   30 days after the date determined in IV A 1 above

Page   2   of   3          **IH ICAT NPNA 300 (08 03)**

2008-1066
000535

B   However, Extended Rental Value coverage does not apply to loss of Rental Value incurred as a result of unfavorable business conditions caused by the impact of the covered Cause of Loss in the area of the Covered Location

V   Other Loss Determination Provisions

   A   We will reduce the amount of Your:

      1   Business Income and Rental Value loss to the extent You can resume Your Operations in whole or in part by using damaged or undamaged property (including merchandise or Stock) at the Covered Location or elsewhere

      2   Extra Expense loss to the extent that You can return Operations to normal and discontinue such Extra Expense

   B   If You do not resume Operations or do not resume Operations as quickly as possible then we will pay based upon the length of time it would have taken to resume Operations as quickly as possible

VI   Limits of Insurance

   A   The most We will pay for loss under this Endorsement during any one Policy Period is the Limit of Insurance shown in the Declarations Page Schedule A. Coverage for Business Income Rental Value Extra Expense Civil Authority Extended Business Income and Extended Rental Value are combined and included in the Limit of Insurance

   B   Loss covered under this Endorsement applies only to loss incurred during the Period of Restoration, and in no event to any such loss which is incurred after 12 months after the date of the direct physical loss or damage from a covered Cause of Loss which caused the suspension of Your Operations

   C   Monthly Limit of Indemnity: Notwithstanding the foregoing, the most We will pay for loss of Business Income and Rental Value excluding Extra Expense associated with such loss in each period of 30 consecutive days is:

      1   The Limit of Insurance; times

      2   16 67%

   In no event will We pay more than Our Limit of Insurance as defined in the Declarations Page Schedule A during any one Policy Period

VII   Definitions

   A   Operations means:

      1   Your business activities occurring at the Covered Location; and

      2   The tenantability of the Covered Location if coverage for Rental Value applies.

   B   Period of Restoration means:

      1   The period of time that begins on the date of the direct physical loss or damage to Covered Property caused by a covered Cause of Loss which caused the suspension of Your Operations;

      2   And ends on the earlier of:

         a   The date when the property at the Covered Location should be repaired rebuilt or replaced with reasonable speed and similar quality; or

         b   The date when business is resumed at a new permanent location

      3   Period of Restoration does not include any increased period required due to the enforcement or any ordinance or law that:

        a   Regulates the construction, use or repair or requires the tearing down of any property; or

        b   Requires You or others to test for monitor clean up remove contain treat detoxify or neutralize or in any way respond to or assess the affect of Pollutants

      4   The expiration date of this Policy will not cut short the Period of Restoration. This Policy will not pay for loss the subject matter of this Endorsement arising out of Causes of Loss occurring outside of the Policy Period defined in the Declarations Page

All other terms and conditions of this Policy remain

**IH  ICAT NPNA 300 (08 03)**

2008-1066
000536

# INDIAN HARBOR INSURANCE COMPANY

## DEDUCTIBLE ENDORSEMENT FORM 400:
## NAMED HURRICANE BY LINE OF COVERAGE

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

I.     The provisions of Article IX will be as stated in this Endorsement

II.     Your deductible under this Policy is as follows:

    A    Named Hurricane: If loss or damage to Covered Property is caused by a Hurricane (as defined herein) Your deductible will be the amount shown in the Declarations Page Schedule A

    B    All Other Wind or Hail: If loss or damage to Covered Property is caused by Wind (other than a Hurricane) or Hail Your deductible will be the amount shown in the Declarations Page Schedule A

    C    All Other Causes of Loss: If loss or damage to Covered Property is caused by any Cause of Loss covered by this Policy other than Wind (including Hurricane) or Hail Your deductible will be the amount shown in the Declarations Page Schedule A

III.     Your deductible will be applied as follows:

    A    In the event a deductible is expressed as a percentage in the Declarations Page, Schedule A, then that percentage deductible shall be equal to a dollar amount determined by multiplying the percentage shown times the applicable Limit(s) of Insurance

    B    We will not pay for loss or damage to Covered Property until the amount of loss or damage from any one Occurrence exceeds the applicable deductible defined in this Endorsement and shown in the Declarations Page, Schedule A We will then pay the amount of loss or damage in excess of the stated deductible up to Our Limit of Insurance. Your deductible amount may be subject to adjustments required by the Coinsurance Condition Endorsement if such Endorsement is attached to this Policy

    C    Your deductible will be applied to Covered Property as follows:

       1    As respects loss or damage to buildings or structures insured under Coverage A of Article IV:

          a    The applicable deductible will be applied separately to all Coverage A building and structure losses from all other Covered Property losses; and

          b    If two or more buildings or structures are insured under Coverage A of Article IV, then the applicable deductible will be applied separately to each such building or structure

       2.    As respects loss or damage to Business Personal Property insured under Coverage B and Tenant Improvements and Betterments insured under Coverage C (both as defined in Article IV of the Policy):

          a    The applicable deductible will be applied to Coverage B and C losses separately from All Other Covered Property Losses; and

          b    If Covered Property covered under Coverages B and C is located in two or more buildings or structures then the applicable deductible will be applied separately to such Covered Property located in each such separate building or structure as shown in the Declarations Page Schedule A; and

          c    The applicable deductible for losses to all Covered Property covered under Coverages B and C will be applied to the sum of all Coverage B and C losses in each building or structure as shown in the Declarations Page Schedule A

       3    As respects loss or damage to Additional Property Coverage Covered Property insured under Coverage D of Article IV:

          a    The applicable deductible will be applied separately to all Coverage D losses from all Other Covered Property losses; and

          b    If Covered Property under Coverage D is located at two or more Covered Locations, then the applicable deductible will be applied separately to such Covered Property at each such Covered Location as shown in the Declarations Page Schedule A; and

          c    The applicable deductible for all Covered Property covered under Coverage D at each Covered Location will be applied to the sum of all such Coverage D losses at each such Covered Location as shown in the Declarations Page Schedule A

**2008-1066**
**000537**

4.   As respects loss  damage or expense to Covered Property insured under Coverage E - Loss of Business Income; Rental Value; Extra Expense:

    a   The applicable deductible will be applied separately to all Coverage E losses from all other Covered Property losses; and

    b.   If Coverage E is applicable to two or more buildings or structures under Coverage A and/or Coverage B of Article IV, then the applicable deductible will be applied separately to each such building or structure as shown in the Declarations Page Schedule A

5   As respects loss or damage to Covered Property under Coverage F of Article IV, the coverage provisions of Coverage F shall not be activated or available to You unless and until the deductible provisions applicable to Coverage A of Article IV, as defined in III-C-1 of this Endorsement  have been satisfied and a claim payment is due to You under the provisions of Coverage A of Article IV.

IV   Hurricane as used herein is defined as a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service.  The duration of the Hurricane shall be from the moment the Hurricane Watch or Hurricane Warning is issued by the National Hurricane Center and continuing for the time period during which the Hurricane Watch or Hurricane Warning is in effect  ending 72 hours following the termination of the last Hurricane Watch or Hurricane Warning issued

All other terms and conditions of this Policy remain

**IH  ICAT NPNA 400  (08 03)**

2008-1066
000538

# INDIAN HARBOR INSURANCE COMPANY

## PERCENT NAMED HURRICANE DEDUCTIBLE ENDORSEMENT FORM 400(ex):
### NAMED HURRICANE BY LINE OF COVERAGE

### EXAMPLE

The following example illustrates how a percentage deductible defined in Deductible Endorsement Form IH ICAT NPNA 400 will function  The Limits of Insurance and Deductibles shown in the following table may not be the Limits of Insurance and Deductibles shown in the Declarations Page; they are being used only to provide You with an example  This example is based upon the assumption that all losses shown in the example are caused by one and the same Occurrence

Location #1, Building #1

| (1) Line of Coverage | (2) Limit of Insurance | (3) Percent Deductible | (4) Loss | (5) Dollar Amount of Deductible[1] | (6) Claim Payment |
|---|---|---|---|---|---|
| Coverage A:  Building | $100,000 | 2% | $25,000 | $2,000 | $23,000 |
| Coverages B and C: Business PP and TIB | $50,000 | 2% | $25,000 | $1,000 | $24,000 |
| Coverage E:  Business Income | $50,000 | 2% | $10,000 | $1,000 | $9,000 |
| Coverage F:  Ordinance or Law | $20,000 | [2] | $10,000 | [2] | $10,000 |
| | | | | | $66,000 |

Location #1, Building #2

| (1) Line of Coverage | (2) Limit of Insurance | (3) Percent Deductible | (4) Loss | (5) Dollar Amount of Deductible[1] | (6) Claim Payment |
|---|---|---|---|---|---|
| Coverage A:  Building | $200,000 | 2% | $50,000 | $4,000 | $46,000 |
| Coverages B and C: Business PP and TIB | $100,000 | 2% | $10,000 | $2,000 | $8,000 |
| Coverage E:  Business Income | $50,000 | 2% | $20,000 | $1,000 | $19,000 |
| Coverage F:  Ordinance or Law | $40,000 | [2] | $15,000 | [2] | $15,000 |
| | | | | | $88,000 |

[1]   The Dollar Amount of the Deductible is calculated by multiplying the Percent Deductible shown in Column (3) times the Limit of Insurance shown in Column (2)

[2]   A loss recovery is payable under Coverage F only when the Coverage A: Building loss (not including any Ordinance or Law loss) is greater than the Coverage A Deductible and a Claim Payment is due under Coverage A  If there is no Claim Payment due under Coverage A, then there is no coverage under Coverage F

2008-1066
000539

Location #1  Coverage D Covered Property

| (1) Coverage D Additional Property | (2) Limit of Insurance | (3) Percent Deductible | (4) Loss | (5) Dollar Amount of Deductible[1] | (6) Claim Payment |
|---|---|---|---|---|---|
| Signs:  Entrance Sign | $5,000 | N/A | $1,000 | N/A | N/A |
| Fences | $10,000 | N/A | $0 | N/A | N/A |
| Storage Building #1 | $10,000 | N/A | $4,000 | N/A | N/A |
| Storage Building #2 | $20,000 | N/A | $5,000 | N/A | N/A |
| Machinery in the Open | $15,000 | N/A | $0 | N/A | N/A |
| Awnings | $15,000 | N/A | $10,000 | N/A | N/A |
| Total | $75,000 | 2%[1] | $20,000 | $1,500[1] | $18,500[2] |

[1]  Your Deductible for Coverage D Additional Property Coverage is calculated by multiplying the Percentage Deductible applicable to Coverage D (2% in this example) times the sum of the Limits of Insurance for all Covered Property listed as covered under Coverage D at each Covered Location ($75,000 in this example)

[2]  The Claim Payment due to You is equal to the sum of all losses to all Covered Property listed under Coverage D ($20,000 in this example) minus the Dollar Amount of the Deductible ($1,500 in this example).

Location #2, Building #1

| (1) Coverage D Additional Property | (2) Limit of Insurance | (3) Percent Deductible | (4) Loss | (5) Dollar Amount of Deductible[1] | (6) Claim Payment |
|---|---|---|---|---|---|
| Signs:  Entrance Sign | $5,000 | N/A | $1,000 | N/A | N/A |
| Fences | $10,000 | N/A | $0 | N/A | N/A |
| Storage Building #1 | $10,000 | N/A | $4,000 | N/A | N/A |
| Storage Building #2 | $20,000 | N/A | $5,000 | N/A | N/A |
| Machinery in the Open | $15,000 | N/A | $0 | N/A | N/A |
| Awnings | $15,000 | N/A | $10,000 | N/A | N/A |
| Total | $75,000 | 2%[1] | $20,000 | $1,500[1] | $18,500[2] |

[1]  The Dollar Amount of the Deductible is calculated by multiplying the Percent Deductible shown in Column (3) times the Limit of Insurance shown in Column (2)

[2]  A loss recovery is payable under Coverage F only when the Coverage A: Building loss (not including any Ordinance or Law loss) is greater than the Coverage A Deductible and a Claim Payment is due under Coverage A  If there is no Claim Payment due under Coverage A  then there is no coverage under Coverage F.

2008-1066
000540

Location #2  Coverage D Covered Property

| (1)<br>Coverage D Additional Property | (2)<br>Limit of<br>Insurance | (3)<br>Percent<br>Deductible | (4)<br>Loss | (5)<br>Dollar<br>Amount of<br>Deductible[1] | (6)<br>Claim<br>Payment |
|---|---|---|---|---|---|
| Signs:  Building Sign | $2,500 | N/A | $0 | N/A | N/A |
| Fences | $10,000 | N/A | $0 | N/A | N/A |
| Storage Building | $10,000 | N/A | $7,500 | N/A | N/A |
| Machinery in the Open | $25,000 | N/A | $0 | N/A | N/A |
| Awnings | $2,500 | N/A | $2,500 | N/A | N/A |
| Total | $50,000 | 2%[1] | $10,000 | $1,000[1] | $9,000[2] |

[1]  Your Deductible for Coverage D Additional Property Coverage is calculated by multiplying the Percentage Deductible applicable to Coverage D (2% in this example) times the sum of the Limits of Insurance for all Covered Property listed as covered under Coverage D at each Covered Location ($50,000 in this example)

[2]  The Claim Payment due to You is equal to the sum of all losses to all Covered Property listed under Coverage D ($10,000 in this example) minus the Dollar Amount of the Deductible ($1,000 in this example)

Summary of Claim Payments Due You

| | |
|---|---|
| Location #1, Building #1 | $66,000 |
| Location #1, Building #2 | $88,000 |
| Location #1, Coverage D:  Additional Property | $18,500 |
| Location #2, Building #1 | $9,000 |
| Location #2, Coverage D:  Additional Property | $9,000 |
| Total | $190,500 |

THIS ENDORSEMENT DOES NOT CHANGE OR MODIFY ANY OF THE TERMS AND CONDITIONS OF THIS POLICY

2008-1066
000541

# INDIAN HARBOR INSURANCE COMPANY

## REPLACEMENT COST ENDORSEMENT FORM 500

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

I. **Article VIII - Valuation** is deleted and replaced with the provisions contained in this Endorsement

II. Valuation

    A    We shall not pay more than the Replacement Cost (without deduction for depreciation) of the Covered Property at the time of loss  The loss or damage shall be ascertained or estimated according to such Replacement Cost value, but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality  nor the amount for which You may be liable

    B    You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a Replacement Cost basis  In the event You elect to have loss or damage settled on an Actual Cash Value basis, You may, at a later date  make a claim for the coverage on the basis of this Replacement Cost Endorsement if You notify Us of Your intent to do so within 180 days after the loss or damage to the Covered Property

    C    We will not pay more for loss or damage to Covered Property on a Replacement Cost basis than the lesser of:

        1    Our Limit of Insurance applicable to the damaged Covered Property; or

        2    The cost to repair or replace  at the same location  the damaged Covered Property with other property:

            a    Of comparable material and quality; and

            b    Used for the same purpose;

        3    Or the amount You actually spend that is necessary to repair or replace the damaged Covered Property

    D.    Notwithstanding the foregoing, in the event You elect to not repair, restore or replace the damaged Covered Property, or You do not commence the repairs, restoration or replacement of the damaged Covered Property within a reasonable period of time (which in no event shall be greater than 18 months from the date of the loss causing the damage to the Covered Property) then this Replacement Cost coverage shall not apply but rather the provisions of Article VIII of the Policy shall apply.  Additionally, this Replacement Cost coverage does not apply to the property itemized immediately below; rather  the provisions of Article VIII of the Policy shall apply:

        1    Property of others

        2    Contents of a residence

        3    Manuscripts

        4.    Works of art  antiques or rare articles  including but not limited to etchings  pictures  statuary marble  bronzes  porcelain, and bric-a-brac

        5    Stock

All other terms and conditions of this Policy remain

**IH ICAT NPNA 500  (08 03)**

**2008-1066**
**000542**

# INDIAN HARBOR INSURANCE COMPANY

## EXCESS COVERAGE PERMITTED ENDORSEMENT FORM 503

### THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.

Permission is granted the Named Insured to have excess insurance over the Limit of Insurance set forth in this Policy without prejudice to this Policy  The existence of such insurance  if any  shall not reduce Our Limit of Insurance under this Policy

All other terms and conditions of this Policy remain.

IH  ICAT NPNA 503     (08 03)

2008-1066
000543

# INDIAN HARBOR INSURANCE COMPANY

## FLORIDA STATE SPECIFIC ENDORSEMENT FORM 600FL

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

I.   **Article III - Cancellation Provisions -** will be as stated in this Endorsement

   A   The first Named Insured shown in the Declarations Page may cancel this Policy at any time by mailing or delivering to Us advance written notice of cancellation

   B   Cancellation for Policies in Effect 90 Days or Less

      1   If this Policy has been in effect for 90 days or less, We may cancel this Policy by mailing or delivering to the First Named Insured written notice of cancellation accompanied by the specific reasons for cancellation, at least:

         a   10 days before the effective date of cancellation if We cancel for nonpayment of premium;

         b   20 days before the effective date of cancellation if We cancel for any other reason except We may cancel immediately if there has been:

            i   A material misstatement or misrepresentation; or

            ii   A failure to comply with underwriting requirement established by Us

      2   We may not cancel:

         a.   On the basis of property insurance claims that are the result of an act of God, unless We can demonstrate by claims frequency or otherwise that You have failed to take action reasonably necessary as requested by Us to prevent reoccurrence of damage to the Covered Property; or

         b   On the basis of filing claims for partial loss caused by Sinkhole damage regardless of whether this Policy has been the subject of a Sinkhole claim or on the basis of the risk associated with the occurrence of such a claim. However We may cancel this Policy if:

            i   The total of such property insurance claim payments for this Policy exceeds the current policy limits of coverage for property damage; or

            ii   You have failed to repair the structure in accordance with the engineering recommendation upon which any loss payment or policy proceeds were based.

   C   Cancellation for Policies in Effect for More Than 90 Days

      1   If this Policy has been in effect for more than 90 days, We may cancel this Policy only for one or more of the following reasons:

         a   Nonpayment of premium

         b   The Policy was obtained by a material misstatement or misrepresentation

         c   There has been a failure to comply with underwriting requirements established by Us within 90 days of the effective date of coverage

         d   There has been a substantial change in the risk covered by this Policy

         e   The cancellation is for all insureds under such policies for a given class of insureds

         f.   On the basis of property insurance claims that are the result of an act of God, if We can demonstrate by claims frequency or otherwise that You have failed to take action reasonably necessary as requested by Us to prevent reoccurrence of damage to the Covered Property

         g   On the basis of filing claims for partial loss caused by Sinkhole damage or on the basis of the risk associated with the occurrence of such a claim if:

            i   The total of such property insurance claim payments for this Policy exceeds the current policy limits of coverage for property damage; or

2008-1066
000544

    ii.  You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment of policy proceeds were based

2.  If We cancel this Policy for any of these reasons, We will mail or deliver to the first Named Insured written notice of cancellation accompanied by the specific reasons for cancellation at least:

    a.  10 days before the effective date of cancellation if cancellation is for nonpayment of premiums; or

    b.  45 days before the effective date of cancellation if:

        i.  Cancellation is for one or more of the reasons stated in C 1 b through C 1 g above; and

        ii.  This Policy does not cover a residential structure or its contents

    c.  90 days before the effective date of cancellation if:

        i.  Cancellation is for one or more of the reasons stated in C 1 b through C 1 g above; and

        ii.  This Policy covers a residential structure or its contents

D.  Notice of cancellation will state the effective date of cancellation  The Policy Period will end on that date.

E.  If this Policy is cancelled  We will send the first Named Insured any premium refund due unless otherwise stipulated by law

    1  If We cancel  the refund will be prorated based upon the number of days remaining until the end of the Policy Period

    2  If You cancel  the premium refund will be determined as follows:

        a  If this Policy was not in force at any time between June 1 and November 1 of the current Policy Period, then the premium refund will be equal to 90% of the unearned premium under the Policy as of the effective date of cancellation

        b  If this Policy was in force at any time between June 1 and November 1 of the current Policy Period  then the premium refund will be a percentage of the total annual premium of the Policy for the current Policy Period as defined in the table immediately below:

| Days Policy Was In Force During Current Policy Period | Percent of Annual Premium To Be Refunded |
|---|---|
| 1 to 180 | 20 0% |
| 181 to 210 | 15 0% |
| 211 to 240 | 10.0% |
| 241 to 270 | 7 5% |
| 271 to 300 | 5.0% |
| 301 to 330 | 2.5% |
| 331 to 365 | 0.0% |

F  Nonrenewal:

    1.  If We decide not to renew this Policy, We will deliver to the First Named Insured written notice of nonrenewal  accompanied by the specific reason for nonrenewal at least:

        a  90 days prior to the expiration of the Policy if this Policy covers a residential structure or its contents; or

        b  45 days prior to the expiration of the Policy for all other Policies

    2  Any notice of nonrenewal will be mailed or delivered to the First Named Insured's last mailing address known to Us

    3  We may refuse to renew this Policy:

        a.  On the basis of property insurance claims that are the result of an act of God  unless we can demonstrate, by claims frequency or otherwise, that You have failed to take action reasonably necessary as requested by Us to prevent reoccurrence of damage to the Covered Property; or

        b.  On the basis of filing claims for partial loss caused by Sinkhole damage  regardless of whether this Policy has been the subject of a Sinkhole claim  or on the basis of the risk associated with the occurrence of such a claim  However  we may refuse to renew this Policy if:

            i  The total of such property insurance claim payments for this Policy exceeds the current policy limits of coverage for property damage; or

    IH ICAT NPNA 600 FL (08 03)

2008-1066
000545

ii    You have failed to repair the structure in accordance with the engineering recommendations upon which any loss payment or policy proceeds were based

G     If notice of cancellation or nonrenewal is mailed  proof of mailing will be sufficient proof of notice

II    **Article X - Property and Interests Excluded - is amended by the addition of the following exclusion:**

36    We will not pay for the cost of paint or waterproofing products  nor the cost to apply  strip or repair paint or waterproofing products  to the exterior of Covered Property insured under Coverage A of Article IV or to building(s) or structure(s) insured under Coverage D of Article IV  if such painting or waterproofing is damaged by Wind (including Hurricane) or Hail  even if Wind (including Hurricane) or Hail are covered Causes of Loss hereunder  if such Covered Property is located in any of the following places:

a     Broward County;

b     Dade County;

c     Martin County;

d     Monroe County;

e     Palm Beach County;

f     All areas east of the west bank of the Intra-Coastal Waterway in the counties of:

i     Indian River  and
ii    St  Lucie

We will not include the value of paint or waterproofing material  or the cost to apply  strip  or repair such material  to determine the amount of Your Wind (including Hurricane) or Hail deductible  or the value of Covered Property if the Coinsurance Condition Endorsement is attached to the Policy

III   **Article XXIX - Settlement of Loss - is deleted and replaced with the following:**

Provided You have complied with all the terms of this Policy  We will pay for covered loss or damage:

A     Within 20 days after We receive Your signed  sworn proof of loss and We reach agreement with You; or

B     Within 30 days after We have received Your signed  sworn proof of loss and:

1     There is an entry of final judgment; or

2     There is a filing of an appraisal award with Us

All other terms and conditions of this Policy remain

2008-1066
000546

# PRIVACY POLICY

The XL America, Inc  insurance group ("We" or "Our Group"), respects the privacy of all personal information . Thus, the information We collect from our customers  or potential customers  is treated with the highest degree of privacy

We have developed a Privacy Policy for Our Group that:
1) ensures the security of your information; and
2) complies with state and federal privacy laws

The term "personal information" includes all information we obtain about a customer and maintain in our files   All persons with access to personal information are required to follow this policy

## Our Privacy Promise

Your privacy rights are important to us   Analysis of your private information allows us to provide to you excellent service and products   Your trust in us depends upon the security and integrity of our records   Thus  We promise to:

1) Follow strict security standards   This will protect any information you share with us, or that we receive about you
2) Verify and exchange data regarding your credit and financial status only for the purposes of: underwriting; policy administration; or risk management   We will obtain only reputable references and services
3) Collect and use the least amount of information necessary to:
   a   advise you and deliver excellent service and products; and
   b   conduct our business
4) Train our employees to securely handle private information   We will only permit authorized employees to have access to such information
5) Not disclose data about you or your business to any organization outside Our Group or to third party providers unless:
   a   we disclose to you our intent to do so; or
   b   we are required to do so by law
6) Not disclose medical information unless:
   a   you give us written consent to do so; or
   b   We disclose for any exception provided in the law
7) attempt to keep our records complete and exact
8) advise you how and where to access your account (unless prohibited by law)
9) advise you how to correct errors or make changes to your account
10) inspect our procedures to ensure your privacy

## Collection and Sources of Information

We collect only the personal information needed to:
1) determine suitability for a product or service;
2) manage the product or service; and
3) advise customers about our products and services

The information we collect come from the following sources:

- **Submission -** In the application  you provide: your name; address; phone number; e-mail address; and other types of private information
- **Quotes -** We collect information to determine:
  1) your eligibility for an insurance product; and
  2) your coverage cost
  The data we collect will vary with the type of insurance you seek
- **Transactions -** We maintain records of all transactions with Our Group and our third party providers   Our records include:
  1) your coverage choices;
  2) premiums; billing; and payment records,
  3) claims history; and
  4) other data related to your account

**XLA  Privacy Notice (04 03)**

2008-1066
000547

- **Claims -** We maintain records on any claims that are made under your policies  The investigation of a claim involves collection of a broad range of information  It also involves many issues, some of which do not directly involve you. We will share with you facts that we collect about your claim; unless prohibited by law  The process of claim investigation also involves advice; opinions; and comments from many people  These may include attorneys and experts  This will help us determine how best to handle your claim.  To protect the legal and privileged aspects of opinions and advice, we will not disclose this information to you

- **Credit and Financial Reports -** We may receive your credit history  This is to support information you provided during the submission and quote processes  This history will help to underwrite your coverage

## Retention and Correction of Personal Information

We retain personal information only as long as required by law; or as required by our business methods  If we become aware that any information may be incorrect, we will make reasonable effort to correct it

## Storage of Personal Information

Safeguards are in place to protect data and paper files containing personal information

## Sharing/Disclosing of Personal Information

We do not share personal information with a third party outside of Our Group for marketing purposes. This is true unless such sharing is permitted by law  Information may be shared with a third party for necessary servicing of the product  It may also be disclosed for other business reasons as permitted by law

We do not share personal data outside of Our Group for servicing or joint marketing reasons  We will only disclose such data when a contract containing non-disclosure language has been signed by us and the third party

Unless a consumer consents, we do not disclose "consumer credit report" type information outside of Our Group.  "Consumer credit report type information" means such things as: net worth; credit worthiness; hobbies (piloting, boating, etc ); solvency  etc

We also do not disclose outside of Our Group personal information for use in marketing   We may share information within Our Group regarding our experience and dealings with the customer

We may disclose private information about a customer as allowed or otherwise required by law  The law allows us to share a customer's financial data within Our Group for marketing purposes  The law does not allow customers to limit or prevent such disclosures

We may also disclose personal information about you or your business to:
- your independent agent or broker;
- an independent claim adjuster; investigator; attorney; or expert;
- persons or groups that conduct scientific studies  This includes actuaries and accountants;
- a medical care facility or professional to verify coverage for a covered person;
- an insurance support group;
- another insurer if to prevent fraud;
- another insurer to properly underwrite a risk;
- insurance regulators;
- governmental authorities pursuant to law;
- an authority in response to a valid administrative or judicial order  This includes a warrant or subpoena;
- a party for the following purposes regarding a book of business: sale; transfer; merger; or consolidation  This applies whether the transaction is proposed or complete;
- a professional peer review group  This includes reviewing the service or conduct of medical care facilities or personnel;
- a covered person for providing the status of a transaction; or
- any of the following: a lienholder; mortgagee; assignee; lessor; or other person of record having a legal interest in the policy

2008-1066
000548

**Policy for Personal Information Relating to Nonpublic Personal Health Information**

We do not disclose nonpublic personal health information about a customer; unless consent is obtained from that customer. However, such consent shall not be prohibited, limited or sought for certain insurance functions. This includes  but is not limited to:

    a    claims administration;

    b    fraud prevention;

    c    underwriting; policy placement or issuance; loss control or auditing

**Access to Your Information**

The following persons will have access to personal information we collect:

employees of Our Group and third party service providers   Information will only be collected as is needed in transactions with you

**Violation of the Privacy Policy**

Any person violating this Policy will be subject to discipline  This may include termination

For questions regarding this privacy statement, please contact your broker

      **XLA  Privacy Notice (04 03)**

2008-1066
000549

## IN WITNESS ENDORSEMENT

INDIAN HARBOR INSURANCE COMPANY
ADMINISTRATIVE OFFICE :   SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE:   316 NORTH FIFTH STREET
BISMARK, ND 58501

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

David B. Duclos
President

Kenneth P. Meagher
Secretary

IL MP 9104  0704 IHIC

2008-1066
000550

# Indian Harbor Insurance Company
## Policy Changes Endorsement Form 800

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NUMBER: ICI0976100121401 | CHANGES EFFECTIVE: 02/01/2005 | POLICY CHANGE NUMBER: |
|---|---|---|
| **PRODUCER:** PROGRAM UNDERWRITERS INC 3700 COCONUT CREEK PKWY SUITE 228 COCONUT CREEK, FL 33066 PRODUCER NUMBER: 5765884 | | **NAMED INSURED:** BEVERLY HILLS APARTMENTS INC ETAL 305 NW 72ND AVENUE MIAMI, FL 33126 |

**INSURED CHANGES:**
Beverly Hills Apartments Inc
Loch Lomond Apartments Inc
Gables by the Sea Inc
The Clearing Apartments Inc
Monte Carlo Apartments

**ADDITIONAL INTEREST CHANGES:**
**Added Additional Interest:**

Mellon United National Bank ISAOA (Mortgagee), 1399 SW 1st Street, Miami, FL 33130

**Added Additional Interest:**

Unibank (Mortgagee), 9795 South Dixie Highway, Miami, FL 33156

**Deleted Additional Interest:**
Mellon United National Bank ISAOA (Mortgagee), 1399 SW 1st Street, Miami, FL 33130

**Deleted Additional Interest:**
Unibank (Mortgagee), 9795 South Dixie Highway, Miami, FL 33156

Assigned Additional Interest to : Location 1, Building 1:

2008-1066
000551

Unibank (Mortgagee), 9795 South Dixie Highway, Miami, FL 33156

**Assigned Additional Interest to : Location 1, Building 2:**
Unibank (Mortgagee), 9795 South Dixie Highway, Miami, FL 33156

**Assigned Additional Interest to : Location 3, Building 1:**
Mellon United National Bank ISAOA (Mortgagee), 1399 SW 1st Street, Miami, FL 33130

Process Date: 05/10/2005

AUTHORIZED REPRESENTATIVE:

IH ICAT NPNA 800 (08 03)

2008-1066
000552

# INDIAN HARBOR INSURANCE COMPANY

## POLICY CHANGES ENDORSEMENT FORM 800

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY.

This Endorsement modifies insurance provided under the Policy

| POLICY NUMBER:<br>ICI0976100121401 | CHANGES EFFECTIVE:<br>02/01/2005 | POLICY CHANGE NUMBER: |
|---|---|---|

| PRODUCER: 5765884<br>PROGRAM UNDERWRITERS<br>3700 COCONUT CREEK PKWY<br>SUITE 228<br>COCONUT CREEK, FL 33066 | NAMED INSURED:<br>BEVERLY HILLS APARTMENTS INC ETAL<br>305 NW 72ND AVENUE<br>MIAMI, FL 33126 |
|---|---|

CHANGES:
THE FOLLOWING ADDITIONAL NAMED INSURED'S ARE ADDED TO THE POLICY:

BEVERLY HILLS APARTMENTS INC
LOCH LOMOND APARTMENTS INC
GABLES BY THE SEA INC
THE CLEARING APARTMENTS INC
MONTE CARLO APARTMENTS INC

NO CHANGE IN PREMIUM
Processed 8.2.2005 12:36:00 PM ST

AUTHORIZED REPRESENTATIVE      *John C. Graham*

IH ICAT NPNA  800 (08 03)

2008-1066
000553

# Indian Harbor Insurance Company
# Policy Changes Endorsement Form 800

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

| POLICY NUMBER:<br>ICI0976100121401 | CHANGES EFFECTIVE:<br>05/25/2005 | POLICY CHANGE NUMBER: |
| --- | --- | --- |
| PRODUCER:<br><br>PROGRAM UNDERWRITERS INC<br>3700 COCONUT CREEK PKWY<br>SUITE 228<br>COCONUT CREEK, FL 33066<br><br>PRODUCER NUMBER: 5765884 | NAMED INSURED:<br><br>BEVERLY HILLS APARTMENTS INC ETAL<br>305 NW 72ND AVENUE<br><br>MIAMI, FL 33126 | |

INSURED CHANGES: NA

**ADDITIONAL INTEREST CHANGES:**

**Deleted Additional Interest:**
*Mellon United National Bank ISAOA (Mortgagee), 1399 SW 1st Street, Miami, FL 33130*

Process Date: 06/06/2005

AUTHORIZED REPRESENTATIVE: *John C. Graham*

IH ICAT NPNA 800 (08 03)

2008-1066
000554

# SWORN STATEMENT IN PROOF OF LOSS

ANY PERSON WHO, KNOWINGLY AND WITH
INTENT TO INJURE, DEFRAUD OR DECEIVE
ANY INSURANCE COMPANY, FILES A
STATEMENT OF CLAIM CONTAINING ANY
FALSE, INCOMPLETE OR MISLEADING
INFORMATION, IS GUILTY OF A FELONY OF THE
THIRD DEGREE

**$5,000,000 00**
Amount Of Policy At Time of
Loss

**IClO976100121401**
Policy Number

**02/01/05**
Date Issued

**Coconut Creek, Fl**
Agency At

**02/01/06**
Date Expires

**Program Underwriters Inc.**
Agent

To the___Insurance Company Indian Harbor Insurance Company, 316 N. 5th Street, Bismark, ND 19801-1147

At time of loss, by the above indicated policy of insurance you insured Beverly Hills Apartment Inc et al.-Beverly Hills Apartments Inc., 201 NW 72nd Ave., Miami Fl 33126 against loss by Hurricane to the property described under Schedule "A" according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto

1   **Time & Origin:** A Hurricane loss occurred about the hour of_____o'clock m on the____24th____day of October 2005. The cause and origin of the said loss were: Hurricane Wilma

2   **Occupancy:** The building described or containing the property described was occupied at the time of the loss as follows, and for no other purpose whatsoever: Residential Apartments .

3   **Title & Interest:** At the time of the loss the interest of your insured in the property described therein was **conditional subject to mortgage.**

No other person or persons had any interest therein, or incumbrance thereon, except: Mellon United National Bank ISAOA.

4   **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described except: None

5   The Total Amount of insurance upon the property described by this policy was at the time of the loss, $ 5,000,000.00 , as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid

6   The **Actual Cash Value** of said property at the time of the loss was          $ 5,000,000.00

7   The **Whole Loss and Damage** was          $ 491,833.20

8   **Less Amount of Deductible**          $ 25,000.00

9   The **Amount Claimed** under the above numbered policy is          $ 466,833.20

*The insured is unclear as to what is being requested by the insurer in its Schedule "A", "B" and "C", therefore,*
*this Proof of Loss will be submitted without the accompanying schedules.*

The said policy did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or to render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof



EXHIBIT

B

**2008-1066**
**000638**

# SWORN STATEMENT IN PROOF OF LOSS

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.  The insureds or recipients of payments under this policy hereby assign their rights of recovery to the insurer to the amount of the payment

State of **Florida**

County of _____ Miami-Dade

President  FERNANDO L. RIVEIRO

Subscribed and sworn be fore me this _26_ day of _Feb_, 20 _09_

_____ Notary Public

State of **Florida**

County of _Miami-Dade_

VIVIAN P. SAO
MY COMMISSION # DD 677290
EXPIRES: September 15, 2009
Bonded Thru Notary Public Underwriters

Vice President  LOZARO D. ALONSO

Subscribed and sworn be fore me this _26_ day of _Feb_ 20 _09_

_____ Notary Public



VIVIAN P. SAO
MY COMMISSION # DD 677290
EXPIRES: September 15, 2009
Bonded Thru Notary Public Underwriters

**2008-1066**
**000639**

## SWORN STATEMENT IN PROOF OF LOSS

ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION, IS GUILTY OF A FELONY OF THE THIRD DEGREE

$1,972,000.00
Amount Of Policy At Time of Loss

ICI0976100121401
Policy Number

02/01/05
Date Issued

Coconut Creek, Fl
Agency At

02/01/06
Date Expires

Program Underwriters Inc.
Agent

To the___ Insurance Company **Indian Harbor Insurance Company, 316 N. 5th Street, Bismark, ND 19801-1147**

At time of loss, by the above indicated policy of insurance you insured **Beverly Hills Apartment Inc et al.-Beverly Hills Apartments Inc., 211 NW 72nd Ave., Miami Fl 33126** against loss by **Hurricane** to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms, endorsements transfers and assignments attached thereto

1   **Time & Origin:** A **Hurricane** loss occurred about the hour of _____o'clock m on the **24th** day of October **2005** The cause and origin of the said loss were: **Hurricane Wilma**

2   **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other

purpose whatsoever: **Residential Apartments** .

3   **Title & Interest:** At the time of the loss the interest of your insured in the property described therein was **conditional subject to mortgage.**

No other person or persons had any interest therein. or incumbrance thereon, except: **Mellon United National Bank ISAOA.**

4   **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession location or exposure of the property described, except: None

5   **The Total Amount of insurance** upon the property described by this policy was, at the time of the loss, $   **1,972,000.00** , as more particularly specified in the apportionment attached under Schedule "C" besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6   The **Actual Cash Value** of said property at the time of the loss was                    $   **1,972,000.00**

7   The **Whole Loss and Damage** was                                                        $   **268,362.89**

8   Less Amount of **Deductible**                                                            $   **59,160.00**

9   The **Amount Claimed** under the above numbered policy is                                $   **209,202.89**

*The insured is unclear as to what is being requested by the insurer in its Schedule "A", "B" and "C", therefore, this Proof of Loss will be submitted without the accompanying schedules.*

The said policy did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy  or to render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed  and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made  Any other information that may be required will be furnished and considered a part of this proof

2 of 2

# SWORN STATEMENT IN PROOF OF LOSS

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights   The insureds or recipients of payments under this policy hereby assign their rights of recovery to the insurer to the amount of the payment

State of **Florida**

County of _Dade_

Officer
President  Fernando Rivero

Subscribed and sworn be fore me this _29th_ day of _April_ 20 _09_

_Janine L. Carreno_ _____ Notary Public

```
JANINE L. CARRENO
Comm# DD0845872
Expires 12/16/2012
Florida Notary Assn., Inc
```

State of **Florida**

County of _Dade_

Officer
Vice-President  Lazaro Diego Alonso

Subscribed and sworn be fore me this _26th_ day of _April_ 20 _09_

_Janine L. Carreno_ _____ Notary Public

```
JANINE L. CARRENO
Comm# DD0845872
Expires 12/16/2012
Florida Notary Assn., Inc
```

# SWORN STATEMENT IN PROOF OF LOSS

ANY PERSON WHO, KNOWINGLY AND WITH INTENT TO INJURE, DEFRAUD OR DECEIVE ANY INSURANCE COMPANY, FILES A STATEMENT OF CLAIM CONTAINING ANY FALSE, INCOMPLETE OR MISLEADING INFORMATION, IS GUILTY OF A FELONY OF THE THIRD DEGREE

| | |
|---|---|
| $5,000,000.00 | ICI0976100121401 |
| Amount Of Policy At Time of Loss | Policy Number |
| 02/01/05 | Coconut Creek, Fl |
| Date Issued | Agency At |
| 02/01/06 | Program Underwriters Inc. |
| Date Expires | Agent |

To the___ Insurance Company **Indian Harbor Insurance Company, 316 N. 5th Street, Bismark, ND 19801-1147**

At time of loss, by the above indicated policy of insurance you insured **Beverly Hills Apartment Inc et al.-Loch Lomond Apartment Inc., 355 NW 72nd Ave, Miami Fl 33126** against loss by **Hurricane** to the property described under Schedule "A", according to the terms and conditions of the said policy and all forms endorsements, transfers and assignments attached thereto.

1. **Time & Origin:** A **Hurricane** loss occurred about the hour of _____ o'clock m on the **24th** day of October 20**05** The cause and origin of the said loss were: **Hurricane Wilma**

2. **Occupancy:** The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: **Residential Apartments.**

3. **Title & Interest:** At the time of the loss the interest of your insured in the property described therein was **conditional subject to mortgage.**

   No other person or persons had any interest therein, or incumbrance thereon, except: **Mellon United National Bank ISAOA.**

4. **Changes:** Since the said policy was issued there has been no assignment thereof, or change of interest, use occupancy possession location or exposure of the property described, except: None

5. **The Total Amount of Insurance** upon the property described by this policy was, at the time of the loss, $ **5,000,000.00**, as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6. **The Actual Cash Value** of said property at the time of the loss was — $ **5,000,000.00**

7. **The Whole Loss and Damage was** — $ **321,763.25**

8. **Less Amount of Deductible** — $ **25,000.00**

9. **The Amount Claimed** under the above numbered policy is — $ **296,763.25**

*The insured is unclear as to what is being requested by the insurer in its Schedule "A", "B" and "C", therefore, this Proof of Loss will be submitted without the accompanying schedules.*

The said policy did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or to render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss has in any manner been made  Any other information that may be required will be furnished and considered a part of this proof

# SWORN STATEMENT IN PROOF OF LOSS

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights   The insureds or recipients of payments under this policy hereby assign their rights of recovery to the insurer to the amount of the payment

State of **Florida**

County of _____ Miami-Dade _____

Presiden _FERNANDO L. RIVEIRO_

Subscribed and sworn be fore me this _26_ day of _Feb_ 20 _09_

_____ Notary Public

State of **Florida**

County of _____ Miami Da _____

Vice President _Lazaro D. Alonso_

Subscribed and sworn be fore me this _26_ day of _Feb_ 20 _09_

_____ Notary Public

VIVIAN P. SAO
MY COMMISSION # DD 677290
EXPIRES: September 15, 2009
Bonded Thru Notary Public Underwriters

2008-1066
000655

2008-1066_000637-000659.pdf19                                                   3/3/2009 11:42:23 AM

# SWORN STATEMENT IN PROOF OF LOSS

ANY PERSON WHO, KNOWINGLY AND WITH
INTENT TO INJURE, DEFRAUD OR DECEIVE
ANY INSURANCE COMPANY, FILES A
STATEMENT OF CLAIM CONTAINING ANY
FALSE, INCOMPLETE OR MISLEADING
INFORMATION, IS GUILTY OF A FELONY OF THE
THIRD DEGREE

$5,000,000.00
Amount Of Policy At Time of
Loss

02/01/05
Date Issued

02/01/06
Date Expires

ICI0976100121401
Policy Number

Coconut Creek, Fl
Agency At

Program Underwriters Inc.
Agent

To the___Insurance Company Indian Harbor Insurance Company, 316 N. 5th Street, Bismark, ND 19801-1147

At time of loss, by the above indicated policy of insurance you insured Beverly Hills Apartment Inc et al.-Monte Carlo  Apartments, Inc. 305 NW 72nd Ave., Miami Fl 33126  against loss by Hurricane_____ to the property described under Schedule "A"  according to the terms and conditions of the said policy and all forms  endorsements, transfers and assignments attached thereto.

1    Time & Origin: A  Hurricane_____ loss occurred about the hour of _____o'clock .m  on the____24th____ day of  October 2005.  The cause and origin of the said loss were:  Hurricane Wilma

2    Occupancy: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other

     purpose whatsoever:__Residential Apartments.

3    Title & Interest: At the time of the loss the interest of your insured in the property described therein was conditional subject to mortgage.

     No other person or persons had any interest therein, or incumbrance thereon, except: Mellon United National Bank ISAOA.

4    Changes: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except: None

5    The Total Amount of insurance upon the property described by this policy was, at the time of the loss, $   5,000,000.00         , as more particularly specified in the apportionment attached under Schedule "C", besides which there was no policy or other contract of insurance, written or oral, valid or invalid.

6

7    The Actual Cash Value of said property at the time of the loss was          $   5,000,000.00

8    The Whole Loss and Damage was                                              $   560,616.08

9    Less Amount of Deductible                                                  $   25,000.00

10.  The Amount Claimed under the above numbered policy is                      $   535,616.08

*The insured is unclear as to what is being requested by the insurer in its Schedule "A", "B" and "C", therefore, this Proof of Loss will be submitted without the accompanying schedules.*

The said policy did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy  or to render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss  has in any manner been made   Any other information that may be required will be furnished and considered a part of this proof

2008-1066
000648

2 of 2

# SWORN STATEMENT IN PROOF OF LOSS

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights   The insureds or recipients of payments under this policy hereby assign their rights of recovery to the insurer to the amount of the payment

State of Florida

County of _____ Miami-Dade

Subscribed and sworn be fore me this __26__ day of ___Feb.___ 20_09_

_____ Notary Public

President   Fernando L. Rivera

State of Florida

County of _____ Miami-D

Subscribed and sworn be fore me this __26__ day of ___Feb___ 20_09_

_____ Notary Public

Vice President   Lazaro D Alonso

VIVIAN P. SAO
MY COMMISSION # DD 677290
EXPIRES: September 15, 2009
Bonded Thru Notary Public Underwriters



VIVIAN P. SAO
MY COMMISSION # DD 677290
EXPIRES: September 15, 2009
Bonded Thru Notary Public Underwriters

2008-1066
000649

LAW OFFICES OF
# BOEHM, BROWN, FISCHER,
## HARWOOD, KELLY & SCHEIHING, P.A.

A PROFESSIONAL ASSOCIATION
113 EXECUTIVE CIRCLE
POST OFFICE BOX 11830 (ZIP 32120)
DAYTONA BEACH, FLORIDA 32114
(386) 258-3341
FAX (386) 258-0252
WEBSITE: WWW.BOEHMBROWN.COM

**PARTNERS**
J. RICHARD BOEHM✝▲
JANET L. BROWN✝▲
RANDY FISCHER
SUSAN B. HARWOOD▲
JANICE A. KELLY
MICHAELA D. SCHEIHING▲
R. LANCE WRIGHT

**OF COUNSEL**
DONNA J. DAVIS
THERON A. GUTHRIE
WINIFRED H. QUINLAN

✝BOARD CERTIFIED
CIVIL TRIAL LAW
✝BOARD CERTIFIED
WORKERS' COMPENSATION
▲CERTIFIED CIRCUIT
MEDIATOR

January 26, 2009

**Via Facsimile: (305) 256-9638**

James Ligman, Esquire
Ligman Martin, P.L.
15715 S. Dixie Hwy, Suite # 323
Miami, FL 33157

RE:  Insured       : Beverly Hills Apartments
     Claimant      : Same
     DOL           : 10/24/05
     Claim No:     : ICAT-2005-V-0000003475
     Policy #      : ICI0976100121401
     Our File #    : 2008-1066

Dear Mr. Ligman:

This correspondence serves to confirm that we have tentatively scheduled the examination under oath of the corporate representative with the most knowledge of the insurance policy and damages claimed to the following properties by Hurricane Wilma:

    Location #1 – 201 – 211 NW 72nd Avenue
    Location #2 – 355 NW 72nd Avenue
    Location #3 – 8707-8711 SW 97th Avenue
    Location #4 – 611-615 Forrest Drive
    Location #5 – 305-307 NW 72nd Avenue

As discussed with your assistant, Janine, we are currently holding February 24, 2009, to conduct said examination at your office in Miami, FL.

Please be advised that we are still awaiting receipt of the Sworn Statement in Proof of Loss with supporting documentation to substantiate the damages claimed that was requested in previous letters dated December 18, 2008 and January 9, 2009. Pursuant to the terms and conditions of the subject policy, and in order to properly evaluate the merits of these claims and the amount of your



OCALA
(352) 622-8160
FAX (352) 732-8808

ORLANDO
(407) 660-0990
FAX (407) 660-5052

James Ligman, Esquire
January 26, 2009
Page three

client's loss, we will require that the following materials and documents responsive to all locations which fall within these categories be provide at the examination:

1.   Any and all insurance records, including fire insurance policy and all other policies of insurance which may be applicable to type of loss or loss location, along with any memos, notes, correspondence, etc., concerning the purchase and/or renewal or modification of the insurance coverages.

2.   Photographs and videotapes taken before, during and after the loss of the insured properties, even if not specifically taken for the purpose of inventory or documentation of condition.

3.   All receipts, original bills, invoices, cancelled checks and other vouchers to reflect repairs/replacement of the damages claimed.

4.   Any and all estimates for the repair or replacement of any loss or damages claimed.

5.   Any and all other documentation of any kind or nature verify the claims that have been filed for this loss, including but not limited to, receipts, invoices, cancelled checks, charge account receipts, sales receipts, bills of sale, or related documents referring to the repair or replacement of damages claimed.

6.   All writings evidencing any communications between the insured and its representatives with any representatives of the insurance company or agency personnel regarding the subject occurrence and claims.

7.   Any and all documents reflecting the condition of the buildings or premises before the loss, including but not limited to government inspections/citations, if any, and correspondence, notes, and repair records regarding same.

8.   All appraisals of the insured properties concerned with the claim, either before or after the loss.

9.   Receipts, invoices, plans, specifications and contracts regarding improvements, remodeling etc., to the insured premises, buildings, and/or equipment within the past three years.

10.  Any contracts or retainers with public adjuster or other entities hired by the insured to assist with presentation of the claims.

11.  Any and all maintenance records from January 2004 to date.

James Ligman, Esquire
January 26, 2009
Page three


12.    Monthly rent rolls from January 2005 through December 2005.

13.    Monthly income statements from June 2005 through December 2005.

14.    Statements of Income for the years ended December 31, 2004, 2005 and 2006.

15.    General Ledger Bank Transaction Detail from January 1, 2005 through December 31, 2005.

16.    Transaction Detail by Category from January 1, 2003 through December 31, 2006.

17.    Any and all security deposit refunds from October 1, 2005 through December 31, 2005.

Once again, Indian Harbor Insurance Company continues to reserve all of its rights under the subject policy and applicable Florida Law.

As we advised your assistant, Janine, we are coordinating this examination with numerous other matters we currently have pending in South Florida.  Therefore, if there is any reason that the examination cannot go forward on February 24, 2009, as scheduled, please contact our office so that alternate arrangements can be made.

Very truly yours,

*Sent in the absence
of to avoid delay*

Michaela D. Scheihing


MDS:kam

**I M Mayfield**

|  |  |
|---|---|
| Insured: | Beverly Hills Cond - Locatiion #5 Building #1 |
| Property: | 305 NW 72nd St |
|  | Miami, FL |

| Claim Rep : | Robert Luongo | | Business: | (772) 579-0084 |
| Title: | General Adjuster |
| Company: | IM Mayfield |

| Estimator: | Robert Luongo | | Business: | (772) 579-0084 |
| Title: | General Adjuster |
| Company: | IM Mayfield |

**Claim Number:**          **Policy Number :**          **Type of Loss:** Wind Damage

| Date Contacted: | 5/13/2009 | | | |
| Date of Loss: | 2/11/2009 | | Date Received: | 5/8/2009 |
| Date Inspected: | 5/21/2009 | | Date Entered: | 5/27/2009 9:01 AM |

| Price List: | FLMI5B_MAY09 |
|  | Restoration/Service/Remodel |
| Estimate: | 2009-05-27-0901305NW |

This estimate is not an authorization for repairs.
No adjuster has the authority to authorize any repairs or guarantee payment.
The hiring of a contractor is strictly the decision of the owner or policyholder.
If the damage exceeds the policy deductible, payment of a claim will follow shortly and may include your mortgagee and or
lien holder as a co-payee on your check.
**This estimate is subject to final approval by your insurance carrier.**



EXHIBIT

D

2008-1066
001418

I M Mayfield

**2009-05-27-0901305NW**

### Roof

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| DWELLING | | | | | |
| 23. 50' Man-Lift rental per week | 1.00 EA | 733.00 | 733.00 | (0.00) | 733.00 |
| 24. Crane and operator - 14 ton capacity - 65' extension boom | 40.00 HR | 186.01 | 7,440.40 | (0.00) | 7,440.40 |
| 25. Soffit - wood | 70.00 SF | 4.44 | 310.80 | (0.00) | 310.80 |
| 26. Column - 4" sq. tube w/base pl. /top bkt. - 6 - 4"x4" hangers with 24" posts @ 87.58 each | 4.00 EA | 87.58 | 350.32 | (0.00) | 350.32 |
| 31. Column anchor bolt - 5/8" x 12" x 2" w/2 nuts & washers | 16.00 EA | 15.86 | 253.76 | (0.00) | 253.76 |
| 32. Painting soffit- Minimum charge | 1.00 EA | 180.00 | 180.00 | (0.00) | 180.00 |
| 28. Siding Installer - per hour - Repair Mansard siding | 40.00 HR | 68.06 | 2,722.40 | (0.00) | 2,722.40 |
| 29. Siding - General Laborer - per hour - Repair Mansard siding | 40.00 HR | 29.58 | 1,183.20 | (0.00) | 1,183.20 |
| **Dwelling Totals:** | | | **13,173.88** | **0.00** | **13,173.88** |
| **Totals: Roof** | | | **13,173.88** | **0.00** | **13,173.88** |

### Debris Removal

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| DWELLING | | | | | |
| 19. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 744.80 | 744.80 | (0.00) | 744.80 |
| **Dwelling Totals:** | | | **744.80** | **0.00** | **744.80** |
| **Totals: Debris Removal** | | | **744.80** | **0.00** | **744.80** |
| **Area Dwelling Total:** | | | **13,918.68** | **0.00** | **13,918.68** |
| **Line Item Totals: 2009-05-27-0901305NW** | | | **13,918.68** | **0.00** | **13,918.68** |

2008-1066
001419

I M Mayfield

## Summary for Dwelling

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 13,918.68 |
| Material Sales Tax | @ | 6.000% x | 262.54 | 15.75 |
| Subtotal | | | | 13,934.43 |
| Overhead | @ | 10.0% x | 13,934.43 | 1,393.44 |
| Profit | @ | 10.0% x | 13,934.43 | 1,393.44 |
| **Replacement Cost Value** | | | | **$16,721.31** |
| Net Claim | | | | **$16,721.31** |

Robert Luongo
General Adjuster

2008-1066
001420

 **TM Mayfield**

|  |  |
|---|---|
| Insured: | Beverly Hills Cond - Locatiion #5 Building #2 |
| Property: | 307 NW 72nd St |
|  | Miami, FL |

| Claim Rep.: | Robert Luongo | | Business: | (772) 579-0084 |
|---|---|---|---|---|
| Title: | General Adjuster |
| Company: | TM Mayfield |

| Estimator: | Robert Luongo | | Business: | (772) 579-0084 |
|---|---|---|---|---|
| Title: | General Adjuster |
| Company: | TM Mayfield |

**Claim Number:**          **Policy Number:**          **Type of Loss:** Wind Damage

| Date Contacted: | 5/13/2009 | | | |
|---|---|---|---|---|
| Date of Loss: | 2/11/2009 | | Date Received: | 5/8/2009 |
| Date Inspected: | 5/21/2009 | | Date Entered: | 5/27/2009 9:01 AM |

| Price List: | FLMI5B_MAY09 |
|---|---|
|  | Restoration/Service/Remodel |
| Estimate: | 2009-05-27-0901307NW |

This estimate is not an authorization for repairs.
No adjuster has the authority to authorize any repairs or guarantee payment.
The hiring of a contractor is strictly the decision of the owner or policyholder.
If the damage exceeds the policy deductible, payment of a claim will follow shortly and may include your mortgagee and or lien holder as a co-payee on your check.
**This estimate is subject to final approval by your insurance carrier.**

**TM Mayfield**

2009-05-27-0901307NW

### Roof

| DESCRIPTION | QNTY | | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| DWELLING | | | | | | |
| 25. 50' Man-Lift rental per week | 1.00 | EA | 733.00 | 733.00 | (0.00) | 733.00 |
| 26. Crane and operator - 14 ton capacity - 65' extension boom | 40.00 | HR | 186.01 | 7,440.40 | (0.00) | 7,440.40 |
| 20. Soffit - wood | 2400.00 | SF | 4.44 | 10,656.00 | (0.00) | 10,656.00 |
| 21. Column - 4" sq. tube w/base pl. /top bkt. - 6 - 4"x4" hangers with 24" posts @ 87.58 each | 6.00 | EA | 87.58 | 525.48 | (0.00) | 525.48 |
| 31. Column anchor bolt - 5/8" x 12" x 2" w/2 nuts & washers | 24.00 | EA | 15.86 | 380.64 | (0.00) | 380.64 |
| 22. Exterior - seal or prime then paint with two finish coats | 2400.00 | SF | 1.23 | 2,952.00 | (0.00) | 2,952.00 |
| 28. Siding Installer - per hour - Repair Mansard siding | 40.00 | HR | 68.06 | 2,722.40 | (0.00) | 2,722.40 |
| 29. Siding - General Laborer - per hour - Repair Mansard siding | 40.00 | HR | 29.58 | 1,183.20 | (0.00) | 1,183.20 |
| 30. R&R Cap flashing | 100.00 | LF | 12.55 | 1,255.00 | (0.00) | 1,255.00 |
| **Dwelling Totals:** | | | | **27,848.12** | **0.00** | **27,848.12** |
| **Totals:  Roof** | | | | **27,848.12** | **0.00** | **27,848.12** |

### Debris Removal

| DESCRIPTION | QNTY | | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| DWELLING | | | | | | |
| 19. Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 | EA | 744.80 | 744.80 | (0.00) | 744.80 |
| **Dwelling Totals:** | | | | **744.80** | **0.00** | **744.80** |
| **Totals:  Debris Removal** | | | | **744.80** | **0.00** | **744.80** |
| **Area Dwelling Total:** | | | | **28,592.92** | **0.00** | **28,592.92** |
| **Line Item Totals:  2009-05-27-0901307NW** | | | | **28,592.92** | **0.00** | **28,592.92** |

2009-05-27-0901307NW

6/21/2009          Page: 2

2008-1066
001429

 **TM Mayfield**

## Summary for Dwelling

| | | | | |
|---|---|---|---|---:|
| Line Item Total | | | | 28,592.92 |
| Material Sales Tax | @ | 6.000% x | 4,634.92 | 278.10 |
| Subtotal | | | | 28,871.02 |
| Overhead | @ | 10.0% x | 28,871.02 | 2,887.10 |
| Profit | @ | 10.0% x | 28,871.02 | 2,887.10 |
| **Replacement Cost Value** | | | | **$34,645.22** |
| **Net Claim** | | | | **$34,645.22** |

Robert Luongo
General Adjuster

**2008-1066**
**001430**

**IM Mayfield**

Insured: Beverly Hills Cond - Location 3 Building 1
Property: 355 NW 72nd St
Miami, FL

Claim Rep.: Robert Luongo                           Business:  (772) 579-0084
Title: General Adjuster
Company: IM Mayfield

Estimator: Robert Luongo                           Business:  (772) 579-0084
Title: General Adjuster
Company: IM Mayfield

**Claim Number:**          **Policy Number:**          **Type of Loss:** Wind Damage

Date Contacted: 5/13/2009
Date of Loss: 2/11/2009          Date Received: 5/8/2009
Date Inspected: 5/21/2009          Date Entered: 5/27/2009 9:01 AM

Price List: FLMI5B_MAY09
Restoration/Service/Remodel
Estimate: 2009-05-27-0901355NW

This estimate is not an authorization for repairs.
No adjuster has the authority to authorize any repairs or guarantee payment.
The hiring of a contractor is strictly the decision of the owner or policyholder.
If the damage exceeds the policy deductible, payment of a claim will follow shortly and may include your mortgagee and or lien holder as a co-payee on your check.
**This estimate is subject to final approval by your insurance carrier.**



EXHIBIT

*E*

2008-1066
001421

 I M Mayfield

2009-05-27-0901355NW

### Roof

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| DWELLING | | | | | |
| 1. Remove Tile roofing - Concrete - "S" or flat tile | 10.00 SQ | 162.44 | 1,624.40 | (0.00) | 1,624.40 |
| 15. Tile roofing - Concrete - "S" or flat tile | 11.50 SQ | 593.10 | 6,820.65 | (0.00) | 6,820.65 |
| 2. Bird stop - Eave closure strip for tile roofing - clay | 20.00 LF | 4.24 | 84.80 | (0.00) | 84.80 |
| 16. R&R Drip edge | 40.00 LF | 2.18 | 87.20 | (0.00) | 87.20 |
| **Dwelling Totals:** | | | **8,617.05** | **0.00** | **8,617.05** |
| **Totals: Roof** | | | **8,617.05** | **0.00** | **8,617.05** |

### UNIT 405

#### BALCONY
LxWxH 11' x 7' x 8'

| 288.00 SF Walls | 77.00 SF Ceiling |
|---|---|
| 365.00 SF Walls & Ceiling | 77.00 SF Floor |
| 8.56 SY Flooring | 36.00 LF Floor Perimeter |
| 88.00 SF Long Wall | 56.00 SF Short Wall |
| 36.00 LF Ceil. Perimeter | |

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| DWELLING | | | | | |
| 25. Contents - move out then reset - Small room | 1.00 EA | 32.59 | 32.59 | (0.00) | 32.59 |
| 26. Mask and prep for paint - plastic, paper, tape (per LF) | 36.00 LF | 0.95 | 34.20 | (0.00) | 34.20 |
| 27. Floor protection - self-adhesive plastic film | 77.00 SF | 0.52 | 40.04 | (0.00) | 40.04 |
| 21. Soffit - wood | 77.00 SF | 4.44 | 341.88 | (0.00) | 341.88 |
| 23. R&R Angle - L 2 1/2" x 2 1/2" x 1/4" thick | 48.00 LF | 11.33 | 543.84 | (0.00) | 543.84 |
| 24. Paint the ceiling - two coats | 77.00 SF | 0.71 | 54.67 | (0.00) | 54.67 |

2008-1066
001422

 I M Mayfield

CONTINUED - BALCONY

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Dwelling Totals: | | | 1,047.22 | 0.00 | 1,047.22 |
| Totals: BALCONY | | | 1,047.22 | 0.00 | 1,047.22 |

**Living Room**                                                    LxWxH 24' 3" x 11' x 8'

| | |
|---|---|
| 564.00 SF Walls | 266.75 SF Ceiling |
| 830.75 SF Walls & Ceiling | 266.75 SF Floor |
| 29.64 SY Flooring | 70.50 LF Floor Perimeter |
| 194.00 SF Long Wall | 88.00 SF Short Wall |
| 70.50 LF Ceil. Perimeter | |

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| DWELLING | | | | | |
| 8. Contents - move out then reset - Extra large room | 1.00 EA | 130.24 | 130.24 | (0.00) | 130.24 |
| 13. Mask and prep for paint - plastic, paper, tape (per LF) | 70.50 LF | 0.95 | 66.98 | (0.00) | 66.98 |
| 3. Floor protection - self-adhesive plastic film | 266.75 SF | 0.52 | 138.71 | (0.00) | 138.71 |
| 6. Acoustic ceiling (popcorn) texture - Minimum charge | 1.00 EA | 240.00 | 240.00 | (0.00) | 240.00 |
| 7. Seal & paint acoustic ceiling (popcorn) texture | 266.75 SF | 0.90 | 240.08 | (16.01) | 224.07 |
| 18. Clean wood burning stove - freestanding | 1.00 EA | 24.03 | 24.03 | (0.00) | 24.03 |
| Dwelling Totals: | | | 840.04 | 16.01 | 824.03 |
| Totals: Living Room | | | 840.04 | 16.01 | 824.03 |

2009-05-27-0901355NW                                    6/21/2009          Page: 3

I M Mayfield

Kitchen | | | | LxWxH 8' 7" x 8' x 8'

| | 265.33 SF Walls | | | 68.67 SF Ceiling |
| | 334.00 SF Walls & Ceiling | | | 68.67 SF Floor |
| | 7.63 SY Flooring | | | 33.17 LF Floor Perimeter |
| | 68.67 SF Long Wall | | | 64.00 SF Short Wall |
| | 33.17 LF Ceil. Perimeter | | | |

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| **DWELLING** | | | | | |
| 9. Contents - move out then reset - Small room | 1.00 EA | 32.59 | 32.59 | (0.00) | 32.59 |
| 14. Mask and prep for paint - plastic, paper, tape (per LF) | 33.17 LF | 0.95 | 31.51 | (0.00) | 31.51 |
| 10. Floor protection - self-adhesive plastic film | 68.67 SF | 0.52 | 35.71 | (0.00) | 35.71 |
| 12. Seal & paint acoustic ceiling (popcorn) texture | 68.67 SF | 0.90 | 61.80 | (4.12) | 57.68 |
| **Dwelling Totals:** | | | **161.61** | **4.12** | **157.49** |
| **Totals: Kitchen** | | | **161.61** | **4.12** | **157.49** |
| **Area Dwelling Total:** | | | **2,048.87** | **20.13** | **2,028.74** |
| **Totals: UNIT 405** | | | **2,048.87** | **20.13** | **2,028.74** |

Debris Removal

| DESCRIPTION | QNTY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| **DWELLING** | | | | | |
| 28. Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | 485.00 | 485.00 | (0.00) | 485.00 |
| **Dwelling Totals:** | | | **485.00** | **0.00** | **485.00** |
| **Totals: Debris Removal** | | | **485.00** | **0.00** | **485.00** |
| **Area Dwelling Total:** | | | **11,150.92** | **20.13** | **11,130.79** |
| **Line Item Totals: 2009-05-27-0901355NW** | | | **11,150.92** | **20.13** | **11,130.79** |

2008-1066
001424

 I M Mayfield

**Grand Total Areas:**

| | | |
|---|---|---|
| 1,117.33  SF Walls | 412.42  SF Ceiling | 1,529.75  SF Walls and Ceiling |
| 412.42  SF Floor | 45.82  SY Flooring | 139.67  LF Floor Perimeter |
| 350.67  SF Long Wall | 208.00  SF Short Wall | 139.67  LF Ceil Perimeter |
| | | |
| 0.00  Floor Area | 0.00  Total Area | 0.00  Interior Wall Area |
| 0.00  Exterior Wall Area | 0.00  Exterior Perimeter of Walls | |
| | | |
| 0.00  Surface Area | 0.00  Number of Squares | 0.00  Total Perimeter Length |
| 0.00  Total Ridge Length | 0.00  Total Hip Length | |

2008-1066
001425

 I M Mayfield

## Summary for Dwelling

| | | | | |
|---|---|---|---|---|
| Line Item Total | | | | 11,150 92 |
| Material Sales Tax | @ | 6.000% x | 2,863 00 | 171.78 |
| Subtotal | | | | 11,322.70 |
| Overhead | @ | 10.0% x | 11,322.70 | 1,132.27 |
| Profit | @ | 10.0% x | 11,322.70 | 1,132 27 |
| Cleaning Total Tax | @ | 6.000% x | 28 84 | 1 73 |
| **Replacement Cost Value** | | | | **$13,588.97** |
| Less Depreciation | | | | (20.41) |
| **Actual Cash Value** | | | | **$13,568.56** |
| **Net Claim** | | | | **$13,568.56** |
| Total Recoverable Depreciation | | | | 20.41 |
| **Net Claim if Depreciation is Recovered** | | | | **$13,588.97** |

Robert Luongo
General Adjuster

2008-1066
001426

# BOULDER CLAIMS

October 21, 2009

**VIA – CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Beverly Hills Apartments, Inc.
c/o James Ligman, Esquire
Ligman Martin, P.L.
15715 S. Dixie Hwy, Suite # 323
Miami, FL  33157

**DENIAL OF COVERAGE**

Re:    Insured:        Beverly Hills Apartments Inc etal
         Policy Number:    ICI0976100121401
         Loss Location:    201 NW 72nd Ave; 211 NW 72nd Ave; 355 NW 72nd Ave; and 305 NW 72nd Ave, Miami, FL
         BC Claim Number:    ICAT-2005-V-0000003475
         Date of Loss:    10/24/2005

Dear Beverly Hills Apartments Inc.:

The purpose of this correspondence is to inform you of the decision made by Indian Harbor Insurance Company ("Indian Harbor") regarding the claim presented by you under Policy number ICI0976100121401, for damages allegedly caused by Hurricane Wilma.

Please be informed that on the basis of the information gathered to date, and having carefully reviewed the pertinent facts and circumstances of this claim, Indian Harbor believes that the damages claimed are not compensable under your policy of insurance for the following reasons:

1. Failure to give timely notice (with respect to Loch Lomond, Monte Carlo, and Building 2 of the Beverly Hills Apartments) and fully comply with the conditions and obligations of the insured under the policy of insurance with reference to the loss.

2. Failure to submit sufficient verification and documentation of the loss in question, to show that your damages exceed the amounts already paid by Indian Harbor (plus the applicable deductible) (in the case of the Building 1 of the Beverly Hills Apartments), or exceed the deductible (in the case of Building 2 of Beverly Hills Apartments).

**Boulder Claims, LLC**
3665 Discovery Driv[e]    **EXHIBIT**    [Co]lorado 80303
Tel: 303-327-1800    w[ ]    [Fax]: 303-327-1967

*F*

3. Covered losses observed do not exceed the deductible for the buildings at the Loch Lomond and the Monte Carlo.

4. For any other good and valid reasons, known or unknown at this time.

Importantly, although the initial claim for said loss was reported to the company on October 27, 2005, at that time no damages were reported to the Loch Lomond (355 NW 72nd Ave.), the Monte Carlo (305-307 N.W. 72nd Ave.), or to Building 2 of the Beverly Hills Apartments (211 NW 72nd Ave.). Damages to these three buildings were not reported until July 19, 2008, by your new Public Adjuster, Mr. Garcia of Teamwork Adjusters. Thereafter, you also presented a supplemental claim for additional damages to Building 1 of the Beverly Hills Apartments (201 NW 72nd Ave.). During the investigation of the claim under a reservation of rights, the insured submitted proofs of loss in the following amounts (after the deductibles have been subtracted) on April 29, 2009:

(1) Beverly Hills Apts, 201 NW 72nd Ave.:  $217,589.99
(2) Beverly Hills Apts, 211 NW 72nd Ave.: $209,202.89
(3) Loch Lomand, 355 NW 72nd Ave.: $253,703.20
(4) Monte Carlo, 305 NW 72nd Ave.: $517,649.70

Indian Harbor retained an engineer from EFI, who conducted an inspection of the locations on May 21, 2009. *See a copy of the report attached hereto as Exhibit A.* The roof on the Beverly Hills Apartments, Building 1, at 201 NW 72nd Ave., had been replaced, and there was no evidence remaining to indicate whether that roof suffered wind damages from Hurricane Wilma. Moreover, in the initial adjustment of the claim in 2005-2006, Indian Harbor made payment on this building that included the roof replacement cost and the cost to repair damages to six units on the fourth floor, and which was paid without withholding of any depreciation. No documentation has been presented to show that the insured has incurred damages in excess of those already paid by Indian Harbor ($51,474.17), plus the applicable $59,160 deductible. We note that numerous documents were requested in our attorney's letter to the insured's counsel dated January 26, 2009, in connection with the Examination Under Oath, but that the insured has not presented documents responsive to many of the requests.

Regarding building 2 of the Beverly Hill Apartments, at 211 NW 72nd Ave, the EFI engineer concluded that there was no wind damage to the roof, and there were no interior damages reported. Further, the engineer concluded that deterioration to the roof of that building that was caused by normal long-term wear and tear. Damage due to deterioration and wear and tear is excluded by the policy.

However, the EFI engineer concluded that there was some wind damage to the Loch Lomond Apartments and the Monte Carlo Apartments. At the Loch Lomond, the EFI engineer found that the damage to the replaced tiles at the south edge of the roof, and the interior damage to unit 405 were consistent with damage from hurricane winds. At the Monte Carlo Apartments, the damage to the top of the parapet wall on the southeast of building 307, the damage to the wood siding above the staircases, and the wind uplift at the edges of the building, and the soffit damage, were consistent with damage from hurricane winds. However, there was no evidence of wind damage

to the field of the roof and the water infiltration inside the units was consistent with the deterioration of the roof caused by normal long-term wear and tear.

Indian Harbor's general adjuster, Robert Luongo of T.M. Mayfield, was present at the EFI inspection (as was the insured's public adjuster and property manager), and prepared an estimate of damages for the observed wind damages to both buildings of the Monte Carlo, and to the Loch Lomond. *See estimates of damages attached hereto as Exhibit B.* Please note that the amounts of these estimates do not exceed the deductibles. With regard to the Monte Carlo, which is location number 5 on the policy, Building Number 1 (305 NW 72nd Ave., Miami) has a deductible of $61,200.00, and the estimate of damages was only $16,721.31. Building Number 2 (307 NW 72nd Ave., Miami) also has a deductible of $61,200.00, but the estimate of damages was only $34,645.22. (The public adjuster did not present an estimate for this building nor was a proof of loss submitted.) With regard to Loch Lomond Apartments, at 355 NW 72nd Ave., Miami, the deductible was $91,800.00, but the estimate of damages was only $13,588.97. Thus, for the buildings in which the engineer did find wind damage, the estimates for those damages prepared by Robert Luongo of T.M. Mayfield were all for less than the corresponding deductibles. As such, no payments are due for these damages.

We direct your attention to the following policy provisions:

## NAMED PERIL COMMERCIAL PROPERTY COVERAGE FORM

### Part 1 – General Provisions

### Article I        Insuring Agreement

This Policy insures against direct physical loss or damage to Covered Property the direct result of a Cause of Loss covered hereunder, as provided and defined by the attachment of one or multiple Cause of Loss Coverage Endorsement Forms, while the property is located at a Covered Location.

### WIND AND HAIL CAUSE OF LOSS

### COVERAGE ENDORSEMENT FORM 204

### THIS ENDORSEMENT CHANGES YOUR POLICY. PLEASE READ IT CAREFULLY

I.      This Policy provides coverage for loss or damage directly caused by wind and hail.

II.     Notwithstanding the foregoing, coverage provided by this Endorsement does not include loss, damage or expense to the interior or exterior of any building or structure, or the property inside the building or structure, caused by rain, snow, sand or dust, whether driven by wind or otherwise, unless the building or structure

first sustains wind or hail damage to its roof, walls, doors, or windows, through which the rain, snow, sand, or dust enters.

All other terms and conditions of this Policy remain.

**Article XI**            **Excluded Causes of Loss**

This Policy provides coverage for direct physical loss or damage to Covered Property caused by only the (those) Covered Cause(s) of Loss defined in the Cause of Loss Coverage Endorsement Form(s) attached to this Policy. Loss or damage from all other Causes of Loss, whether caused directly or indirectly, are excluded from coverage under this Policy. The exclusions listed in this Article XI are added to this Policy for clarity; the inclusion of such exclusions shall in no way limit the excluded Causes of Loss applicable to this Policy nor in any way expand the Causes of Loss covered by this Policy. Furthermore loss, expense, and damage the result of a Cause of Loss included in this list of exclusions are excluded from coverage hereunder, whether a covered Cause of Loss that is covered by this Policy contributes concurrently or in any sequence to any loss, expense, or damage.

...

9.       Dampness of atmosphere, dryness of atmosphere, changes   in   or extremes in temperature, shrinkage, evaporation, loss of weight, rust or corrosion, exposure to light, contamination, fungus, mold, mildew, wet rot, dry rot, deterioration, decay, hidden or latent defect, change in flavor or color or texture of finish, whether loss or damage from such excluded Causes of Loss is direct or indirect, proximate or remote, or be in whole or in part caused by, contributed to, or aggravated by a Cause of Loss covered under this Policy

....

**Article XV**            **Notice of Loss**

You shall, as soon as practicable, report in writing to Us or Our representative every loss, damage or occurrence which may give rise to a claim under this Policy and shall also file with Us or Our representative a signed, detailed and sworn proof of loss within 60 days after Our request for such sworn proof of loss. We will provide You with the necessary forms.

**Article XVI**            **Responsibility of Named Insured; Protection of Property**

A.       You shall take all reasonable steps to protect Covered Property from further damage following loss or damage to Covered Property. Notwithstanding the foregoing, We will not pay for any subsequent loss,

damage or expense to such Covered Property the result of a Cause of Loss not covered under this Policy.

B.    You shall keep a record of expenses incurred to protect the Covered Property following loss for consideration in the settlement of the claim.

**Article XVII       Assistance and Cooperation of the Named Insured**

You shall cooperate with Us in the investigation or settlement of any claim.

With respect to the application of the deductible, the policy provides, in Deductible Endorsement Form 400:

III.    Your deductible will be applied as follows:

...

B.    We will not pay for loss or damage to Covered Property until the amount of loss or damage from any one Occurrence exceeds the deductible defined in this Endorsement and shown in the Declarations Page, Schedule A. We will then pay the amount of loss or damage in excess of the stated deductible up to Our Limit of Insurance. Your deductible amount may be subject to adjustments required by the Coinsurance Condition Endorsement if such Endorsement is attached to this Policy.

C.    Your deductible will be applied to Covered Property as follows:

1.    As respects loss or damage to buildings or structures insured under Coverage A of Article IV:

a.    The applicable deductible will be applied separately to all Coverage A building and structure losses from all other Covered Property losses; and

b.    If two or more buildings or structures are insured under Coverage A of Article IV, then the applicable deductible will be applied separately to each building or structure.

**Article XXII       Examination Under Oath**

A.    ... Furthermore, as often as may be reasonably required, You shall produce for examination all writings, books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by

Us or Our representative, and shall permit extracts and copies thereof to be made.

B.   No such examinations under oath or examination of books or documents, nor any other act by Us or any of Our employees or representatives in connection with the investigation of any loss or claim hereunder, shall be deemed a waiver of any defense which We might otherwise have with respect to any loss or claim; all such examinations and acts shall be deemed to have been made or done without prejudice to Our liability.

Valuation is addressed in the Replacement Cost Endorsement Form 500:

I.   Article VIII – Valuation is deleted and replaced with the provisions contained in this Endorsement.

III.   Valuation

A. We shall not pay more than the Replacement Cost (without deduction for depreciation) of the Covered Property at the time of loss. The loss or damage shall be ascertained or estimated according to such Replacement Cost value, but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality nor the amount for which You may be liable.

B. You may make a claim for loss or damage covered by this insurance on an Actual Cash Value basis instead of on a Replacement Cost basis. In the event You elect to have loss or damage settled on an Actual Cash Value basis, You may, at a later date, make a claim for the coverage on the basis of this Replacement Cost Endorsement if You notify Us of Your intent to do so within 180 days after the loss or damage to the Covered Property.

C. We will not pay more for loss or damage to Covered Property on a Replacement Cost basis than the lesser of:

1. Our Limit of Insurance applicable to the damaged Covered Property; or

2. The cost to repair or replace at the same location, the damaged Covered Property with other property:

a. Of comparable material and quality; and
b. Used for the same purpose;
c. Used for the same purpose;

    3.  Or the amount You actually spend that is necessary to repair or replace the damaged Covered Property.

D.  Notwithstanding the foregoing, in the event You elect to not repair, restore or replace the damaged Covered Property, or You do not commence the repairs, restoration or replacement of the damaged Covered Property within a reasonable period of time (which in no event shall be greater than 18 months from the date of the loss causing the damage to the Covered Property) then this Replacement Cost coverage shall not apply but rather the provisions of Article VIII of the Policy shall apply. …

All other terms and conditions of this Policy remain.

**Article VIII**           **Valuation**.

We shall not pay more than the Actual Cash Value of the Covered Property at the time of loss or damage from a covered Cause of Loss. The loss or damage shall be ascertained according to such Actual Cash Value. Actual Cash Value will be determined based on the replacement cost of the property less depreciation (however caused) but in no event shall such amount exceed what it would then cost to repair or replace the Covered Property with material of like kind and quality at the same location nor the amount for which the Named Insured may be liable.

Indian Harbor Insurance Company further maintains that this claim presents coverage issues and not a dispute as to the amount of loss or damage. Therefore, any demand for appraisal is not appropriate. With respect to appraisal the policy provides:

**Article XXVI**           **Appraisal**.

If You and We fail to agree as to the value of the property or amount of loss, damage or expense, each shall, on the written demand of either, select a competent and impartial appraiser and the appraisal shall be made at a reasonable time and place. …

Indian Harbor does not intend by this correspondence to waive any defense or issue in addition to those stated above and expressly reserves its rights to such other issues or defenses as they become known to the Company or its counsel.

In an effort to resolve these issues, please be advised that Indian Harbor Insurance Company has instructed its counsel to proceed with the filing of a Declaratory Petition in the United States District Court, Southern District of Florida, raising the issues of late notice, failure to comply with policy conditions, covered losses fail to exceed the policy's deductibles, and that appraisal is not appropriate. Should you wish to have service of the Declaratory Petition accepted through your attorney, please have him so inform Michaela D. Scheihing.

In the event you intend to pursue litigation against the company concerning this matter, strict compliance with the terms and conditions of the policy will be required.

Regards,


Sheri Mitchell
Claims Examiner
800-754-6919 ext 1817

Encl -  Expert Report
        Estimate

cc:     Program Underwriters Inc
        3700 Coconut Creek Pkwy
        Suite 228
        Coconut Creek, FL 33066

        Michaela D. Scheihing
        Boehm, Brown, FIsher, Harwood, Kelly, & Scheihing, P.A.
        PO Box 11380
        Daytona Beach, FL 32120

℘JS 44   (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below**

**09- 23249**

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| Indian Harbor Insurance Company, a foreign corporation licensed to do business in the State of Florida | Beverly Hills Apartments, Inc. |

**(b)**  County of Residence of First Listed Plaintiff **CIV - GOLD**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)  **/ McALILEY**

Michaela D. Scheihing, Boehm, Brown, Fischer, Harwood, Kelly and
Scheihing, P.A., Post Office Box 11830, Daytona Beach, FL 32120

**09- CV - 23249 - Gold / McAliley**

FILED by ___ D.C.
INTAKE

OCT 2 6 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☑ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. RELATED/RE-FILED CASE(S).**   (See instructions second page):

a) Re-filed Case ☐ YES ☑ NO   b) Related Cases ☐ YES ☑ NO

JUDGE _____   DOCKET NUMBER _____

**VII. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause **(Do not cite jurisdictional statutes unless diversity):**

28 USC Section 2201

LENGTH OF TRIAL via  **5**  days estimated (for both sides to try entire case)

| VIII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ _____ | CHECK YES only if demanded in complaint: JURY DEMAND: ☑ Yes ☐ No |
|---|---|---|---|

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  **10-23-09**

FOR OFFICE USE ONLY

AMOUNT **Pending**   RECEIPT # _____   IFP _____